UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CIVIL CASE NO. 1:24-cv-22523-MOORE/Elfenbein

**KENNY ORTEGA**

    Plaintiff,

v.

**MIAMI-DADE COUNTY**, a political subdivision in the State of Florida, and **JOSEPH DIAZ** in his individual capacity,

    Defendants.
_____/

## PLAINTIFF'S STATUS REPORT[1]

**COMES NOW Plaintiff, KENNY ORTEGA**, by and through his undersigned counsel, and files this *Plaintiff's Status Report* pursuant to this Court's paperless Order dated March 19, 2025, [**ECF 34**], and so states:

### I.     RELEVANT PROCEDURAL BACKGROUND.

1. The original opposed Stay in the instant civil case was granted to Defendants back on September 30, 2024 [**ECF 17**].

2. Defendants' *Motion To Stay* falsely asserted the case should be stayed because allegedly no evidence could be obtained in Discovery in the instant civil case due to the ongoing criminal case against Defendant Diaz [**ECF 11**], who was arrested three years ago in 2022 by the Miami-Dade State Attorney's Office ("MDSAO") for his actions against Plaintiff Ortega, **but has continued his criminal trial at least *ten* times since date, including at least *three* times already since this Court granted and maintained the Stay nine months ago in September 2024.** [ECF 14, 18, 19, 22, 36].

3. Plaintiff has always opposed staying the instant case, wherein Plaintiff has repeatedly exhibited to this Court that a multitude of critical evidence to Plaintiff Ortega's claims has already been publicly released by the MDSAO/City to include the unredacted body-worn camera, police report, Diaz' name and likeness, and many other related documents are

---

[1] Defendants filed their report separately with no conferring on May 2, 2025.

1

public records which cannot be withheld based on Diaz being in trial nor the fact that the police department has arbitrarily marked Diaz' investigation as "open" for over three years waiting until whenever he will decide to stop continuing his criminal trial; that all charges against <u>Plaintiff</u> were dropped in 2020 in relation to his claims in the instant case; and, Plaintiff has cited in a plethora of case law in support of lifting the stay within each Status Report and his Motion To Lift Stay, showing that the outcome of Diaz' criminal trial is irrelevant to moving this case along, as even if he is acquitted that does not moot any claim Plaintiff has wherein the burden of proof in a criminal case is beyond a reasonable doubt, but the burden of proof in the instant case is a preponderance of the evidence. [**ECF 14, 18, 22, 26, 36**].

4. In response to the Court's Orders for the parties to include within the Status Reports whether any claims against Diaz would be "*mooted*" based on the outcome of his criminal trial, Plaintiff has each time informed the Court in his Status Report and *Motion To Lift Stay* that the outcome of Diaz' criminal trial does not "moot" any of Plaintiff's claims in the instant civil case which has a lesser burden of proof, and that Plaintiff will not be dismissing or withdrawing his claims based on the outcome of Diaz' trial. [*Id*.].

5. Plaintiff has also repeatedly argued that the Stay is immoderate and indefinite in contravention of prevailing case law, especially here where each time Defendants give this Court a date that Diaz will go to trial in support of maintaining the Stay, they then go to the criminal court and continue the criminal trial after this Court grants their requested relief to maintain the Stay in effect.

6. Nobody knows when Diaz will go to trial, because he continues to place the Stay in an indefinite and immoderate status through seeking multiple continuances in this criminal trial giving rise to the opposed Stay in the instant case.

7. *To wit*, after this Court denied Plaintiff's *Motion To Lift Stay/Re-Open Case* on <u>March 19, 2025</u> [**ECF 34**], which Plaintiff had filed February 28, 2025 [**ECF 26**] at this Court's Order for Plaintiff to file the motion [**ECF 24**], Diaz' counsel Mr. Trontz – who also represents him in the criminal case – filed another continuance of the criminal trial to now possibly occur five months down the road on <u>September 2, 2025</u>. At the time of the most recent Status Report, that trial was previously scheduled to occur on April 14, 2025. [**EXHIBIT A at Lines 181, 165**]. The motion to continue that criminal trial was filed April 3, 2024, at the Report/Pre-Trial hearing set for the April 14, 2025, trial date. [***Id.* at 178 – 181**].

2

8. By September 2, 2024, this case would be over a year old and the Stay would be a few weeks shy of a year, and that continuance will be Diaz' **SIXTH** continuance since the Stay was issued in this case as shown herein and exhibited in Plaintiff's prior Status Reports and Motion To Lift Stay. [**ECF 14, 18, 19, 22, 26**].

9. In fact, Defendants have exhibited a pattern of conduct in this case of moving for and requesting the relief of a Stay until the next scheduled criminal trial date, listing the date within their filings, only to then go continue Diaz' criminal trial after this Court grants Defendants' opposed relief of granting and/or maintaining the Stay in effect. This includes Diaz' criminal counsel Trontz who is his counsel in the instant civil case, and joined in the Defendant City's opposition to Plaintiff's Motion To Lift Stay. [**ECF 27, 28, 29, 33**].

10. All of **Defendants' charges against Plaintiff were dismissed five years ago now in 2020.**

    1. *To wit,* On August 5, 2024, Defendant filed its first opposed *Motion To Stay Case Pending Conclusion of Criminal Proceedings*. Defendant also requested therein that the instant civil rights case be administratively closed. [**ECF 11**].

    2. Defendant County claimed it would not be able to access or serve requested documents from the <u>Miami-Dade County State Attorney's file</u> in its arrest of <u>Defendant Officer Diaz,</u> charged in 2022 by the Maimi-Dade County State Attorney's Office (MDCSAO), for his actions in his arrest of Plaintiff Mr. Ortega. Defendant County also argued that Defendant Diaz' criminal trial was scheduled to occur on October 28, 2024, and that the Court should await the outcome.

    3. The MDCSAO has already set its case for trial multiple times, but Defendant Diaz repeatedly continued it as shown herein and in Plaintiff's prior opposition.

    4. At the time of Defendant's motion, no discovery requests had even been propounded or served by Plaintiff for Defendant's motion to be ripe, nor meet any requirements of specific objection as required as opposed to its blanket categorical objection wherein it is irrefutable that multiple critical evidence have already been publicly released in this case.

    5. On August 19, 2024, Plaintiff filed his opposition to Defendant's motion. Within that Opposition, Plaintiff exhibited the criminal trial docket from Diaz' public criminal case showing Diaz had continued that case already at least six times on Defense continuances, and that Plaintiff had not yet served any discovery for Defendant's blanket discovery objection

3

to be ripe. [**ECF 14**].

6. On August 23, 2024, Defendant County filed its Reply to Plaintiff's opposition. [**ECF 15**].

7. On September 30, 2024, this Court entered an Order granting Defendant's motion for stay and administratively closed this case. The Court stayed the instant case until November 14, 2024, and the parties were to file a Joint Status update on or before that date to also inform the court if any of Plaintiff's claims had been dismissed as "*moot*." [**ECF 17**].

8. On November 14, 2024, the parties filed their Joint Status Report. The parties informed the Court that Diaz' scheduled October 28, 2024, trial had not occurred due to Defendant Diaz' continuance, and that Diaz had scheduled a plea deal date to enter a plea deal in that criminal case in November 2024. Defendant County again moved within the *Joint Status Update* in the instant filing for a second stay. Plaintiff Ortega opposed a second stay, and renewed and incorporated his prior opposition. [**ECF 18**].

9. Instead of entering any plea at the subsequent hearing, Diaz instead again continued his trial to 2025. Undersigned counsel was present at that public hearing.

10. So on November 18, 2024, Plaintiff also filed a *NOTICE Of Outcome of Defendant Officer Diaz' Plea Hearing Held Today, November 11, 2024: No Plea Entered or Accepted by Defendant Diaz (Plaintiff's Counsel attended in person)* into this case. Plaintiff informed this Court that Defendant Diaz not only failed to enter any plea deal, but again continued his criminal trial. [**ECF 19**].

11. On December 9, 2024, this Court entered an Order granting Defendant's second stay until February 7, 2025. The Court again stated to inform it if any of Plaintiff's claims are "*dismissed as moot;*" that Plaintiff could only "*speculate*" on what documents are being withheld by the MDCSAO; and that Plaintiff provided some "*articles*" of public information already released by the MDCSAO and Defendant Miami-Dade County in the instant case.

12. Plaintiff again informed the Court that multiple critical evidence had already been publicly released and is in the possession of Plaintiff, and that Plaintiff has actual knowledge of what is needed to prosecute this type of case as this is not Plaintiff's counsels' first 1983 case, and undersigned counsel just prevailed via unanimous $2,000,000,000 jury verdict in a federal 1983 case.

13. After this Court entered its December 9, 2024, Order maintaining the Stay in place [**ECF 24**], Defendant Diaz continued the scheduled February trial date to April 14, 2025.

11. Subsequently, after this Court denied Plaintiff's *Motion To Lift Stay/Re-Open Case* on

4

March 19, 2025 [**ECF 34**], which Plaintiff had filed February 28, 2025 [**ECF 26**] at this Court's Order for Plaintiff to file the motion [**ECF 24**], Diaz' counsel Mr. Trontz – who also represents him in the criminal case – filed another continuance of the criminal trial to now possibly occur five months down the road on September 2, 2025. [**EXHIBIT A at Lines 181, 165, 178 – 181**].

14. Plaintiff has repeatedly in all opposition and status reports argued that Defendant Diaz is stalling by repeatedly continuing his criminal case, and that the Court cannot rely on any dates provided by Defendants Diaz or County to continue staying this case because Diaz continues to continue his criminal case, including after this Court grants stays, as shown below.

15. Plaintiff continues to be prejudiced in not being able to move forward nor prosecute the instant case wherein he was damaged. We are now at Defendant's third request for a stay, wherein the only reason they keep seeking the stay is that Defendant Diaz keeps continuing his criminal trial – now for three years wherein he was arraigned in January 2022.

16. Plaintiff has already informed this Court of how Defendant lulled Plaintiff into waiting to file this case based on Defendants putting forth that they wanted to settle the case, and while Plaintiff operated and followed up in good faith, Defendants then never once made an offer.

17. Plaintiff argues that continuing the stays are immoderate, and constructively indefinite since the Court cannot reasonably rely on any date provided by Defendant, and substantively prejudice Plaintiff's due process rights to prosecute his case in a manner that in way serves the public interests but only those interests of Defendants.

## II.     UPDATE

18. Defendant Diaz has now continued his criminal trial again, to September 2, 2025. Plaintiff continues to oppose the instant civil case being stayed.

## III.     PLAINTIFF'S RELIEF REQUESTED REGARDING STAY

Plaintiff, Mr. Kenny Ortega, re-alleges and incorporates herein the above paragraphs 1- 18 as if plead herein, and again requests this Court lift its opposed Stay of this case and not grant any further Stay of this case.

## IV.     SUPPORTING ARGUMENT FOR REQUESTED RELIEF

Under well-settled case law, as cited by this Court in its December 9, 2024, paperless orders granting Defendants first and second requests to stay this case, District Courts have discretion to place cases in stay status, but that the length of the requested stay will not be indefinite or immoderate. *Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr S.A.*, 377 F.3d 1164, 1172 n.7 (11th Cir. 2004) (quoting *Clinton v. Jones*, 520 U.S. 681, 706 (1997)). The Court also ordered that the parties inform this Court if any of Plaintiff's claims had been "*dismissed as moot*.' [**ECF 17; ECF 20**].

Here, Plaintiff contends that the length of stay is both immoderate and indefinite. We are now going into a forth indefinite stay. In fact, by the time the new scheduled trial date of September 2, 2025, arises, the instant civil case will be over a year old, and the Stay will be a few weeks shy of a year old.

How long does Diaz get to infringe Mr. Ortega's rights again? It is not enough that he committed the acts against Mr. Ortega giving rise to this case, and Defendants pre-textually lulled Mr. Ortega into waiting to file this case wherein Mr. Ortega reasonably sought to see if the matter could be resolved without litigation? Now, Diaz gets to indefinitely preclude Mr. Ortega from even prosecuting the claims against Defendants that Mr. Ortega has the right to prosecute pursuant to, *inter alia*, 42 U.S.C. §1983, *Monell*, the Fourth Amendment, and Florida law.

It is indefinite because this Court has no jurisdiction to make Diaz proceed with his criminal trial or comply with his trial dates which Defendants keep giving to this court only to blatantly continue the trial after this Court grants the requested stay, and Defendants know that. However, this Court does have the jurisdiction to move this case along regardless of how many times Diaz keeps continuing his criminal trial. After all, the outcome of Diaz' criminal trial does not mot dismiss nor moot any of Plaintiff's claims herein, and Plaintiff will not be dismissing his claims based on any outcome of Diaz' criminal trial. Plaintiff was the victim of the arrest; he knows what happened. Plaintiff opposes a stay, but humbly asks that if this Court grants a stay, it gives a date certain of moving this case forward regardless of Diaz continuing to forever continue his criminal trial.

In Plaintiff's first Opposition to Defendant's first motion to stay the instant case [**ECF 14**], Plaintiff listed the Defense continuances by date for this Court's convenience, along with the exhibit of Diaz' criminal docket. [**See Exhibit A in ECF 14**].

> *Charged by the SAO over two years ago in 2022 and having entered his plea of not guilty and demand for jury trial way back in January 2022* (**Id. at 5 - 6**) *with the*

> *first trial date being set for May 9, 2022 (**Id. at 17**), Diaz has continued his trial on Defense motion alone from May 9, 2022, to July 18, 2022 (**Id. at 30 – 31**), to October 31, 2022 (**Id. at 40 – 41**), to January 23, 2023 (**Id. at 59 – 60**). Diaz has also filed Defense continuances re-scheduling the most recent trial dates from October 2, 2023, to February 20, 2024 (**Id. at 95 - 96**), and July 18, 2024, to the currently scheduled trial date of October 28, 2024 (**Id. at 135 – 139**). And all those dates do not include the separate dates in between where the Prosecution stipulated to the continuances designated as "STIP" and the court re-scheduled to March 18, 2024 (**Id. at 102**), It is not yet known if Defendant Diaz will once again file motion to continue the current scheduled trial date, while asking this Court to stay the instant §1983 case based on him having an open criminal case.*

[**ECF 11 at Pg 1, ¶2**.].

Then, the evidence clearly shows that Diaz continued to continue his criminal trial after being granted multiple stays in the instant case. On August 5, 2024, Defendant filed its first motion to stay and administratively close this case. Defendant stated Diaz was scheduled for trial in his criminal case for October 28, 2024. [**ECF 11**]. After Plaintiff filed opposition, this Court on granted Defendant's stay on September 30, 2024. [**ECF 17**]. Then, on October 17, 2024, Diaz continued his criminal trial scheduled for October 28, 2024. [**SEE EXHBIT A at 148**]. Defendant moved for a stay in the instant case on November 14, 2024, within the joint status filing. The update was that Diaz had a plea deal date scheduled for November 18, 2024. Plaintiff opposed the granting of a second stay. [**ECF 18**]. However, on November 18, 2024, Diaz did not enter any plea deal. On that same day, Plaintiff filed his notice to this Court that Defendant did not enter a plea deal at the public court date on November 18, 2024, but instead continued his trial again. [**ECF 19**]. The continued trial date was for February 18, 2025. [**EXHIBIT A at 152**]. On December 9, 2024, this Court granted Defendant's second stay. [**ECF 20**]. Subsequently, on January 21, 2025, Defendant Diaz continued his criminal trial again from his February 18, 2025, trial date. [**EXHIBIT A at 159, 162**]. That criminal trial date is now scheduled for April 14, 2025. [**Id. at 165**]. Defendants are again seeking a third stay [**ECF 21**]. Diaz was arrested three years ago in January 2022. [**EXHIBIT A. at 3**]. It is now February 2025.

Under the well-settled **F.R.C.P. 26 and 34**, there is no right of blanket categorical and premature discovery objections, wherein a party simply asks the Court to stay or preclude a case based on Defendant's speculation of what documents may be requested or accessed, wherein no

discovery requests have yet even been served, and Defendants themselves have already released investigation and case-sensitive police report and BWC of the entire arrest – not just a clip – to the public when publicly announcing on the news its charges against Defendant Officer Diaz in his arrest of Plaintiff Mr. Ortega, and dropped all the charges against Mr. Ortega.

>Under **F.R.C.P. 26(b)(1),** as amended,
>>Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

>Under **F.R.C.P. 34(b)(2),** an objecting party
>>(B) **Responding to Each Item**. For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons. The responding party may state that it will produce copies of documents or of electronically stored information instead of permitting inspection. The production must then be completed no later than the time for inspection specified in the request or another reasonable time specified in the response.
>>(C) **Objections**. An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest.

Here, Defendants predicated their motions on an impermissible pre-emptive categorical blanket discovery objection to producing documents wherein <u>no title of even one document or discovery request for any document was before Defendants or this Court, as no discovery had yet been served</u>.  That remained true at the time of the granting of the stays, as this Court closed the instant case administratively after granting Defendant County's first stay.  Defendants also kept citing to Florida state law which allows a Court to grant a stay while an internal investigation is marked open; not requires.  Defendants keep categorically stating that it may not be able to

8

access some documents from the MDCSAO's separate criminal investigation in its arrest of Diaz, not that it can't access its own documents completed by Diaz in his arrest of Mr. Ortega, which is the subject of the instant civil case. Further, as already evidenced to this Court by Plaintiff in his prior opposition, Defendant and/or the MDCSAO have already publicly released multiple case-specific unredacted BWC of Diaz' entire arrest of Mr. Ortega and the police report. Plaintiff only provided a clickable link to only some of the multiple sources of that BWC, police report, and other case/internal investigation information still available online today.[2]

Further, it is indisputable that Defendant releases critical arrest information during its own investigations of an arrest whenever it desires to do so.  It cannot now just arbitrarily decide not to do so when it comes to Mr. Ortega.  *To wit,* this same Defendant County just voluntarily released over 105 minutes of BWC to the public in its detention and/or arrest of famous NFL player Tyreek Hill[3], and informed the public that it would keep the **public updated** throughout its investigation, *"in our commitment to transparency and maintaining public trust,"*  even informing the public that "*One officer, identified by police officials Tuesday as Danny Torres, a 27-year veteran of the force, has already been placed on administrative duty. "The department is committed to conducting a thorough, objective investigation into this matter, and we will continue to update the public on the outcome of that process"*.

Under well-settled case law, the outcome of Diaz' separate criminal case has no bearing on any of Plaintiff's claims being "*dismissed as moot,*" and Plaintiff will not be dismissing any of his claims as moot based on the outcome of Diaz' criminal trial.  The instant civil rights case for false arrest turns on whether Diaz had probable cause to arrest Plaintiff at the time of arresting him, and whether his use of force was justified despite even if the arrest would be valid.  Even a subsequent exoneration of Diaz criminally will not moot, dismiss, nor cause summary judgment to be granted on any of Plaintiff Ortega's claims.  While Plaintiff has the right to

---

[2] *Miami-Dade State Attorney announces charges against 3 police officers after FDLE investigations*" https://www.local10.com/news/local/2022/01/12/3-former-police-officers-face-charges-in-3-cases-after-fdleinvestigation/;  *Opa-locka police captain who shot fellow cop with Taser among 3 officers facing charges*" https://www.miamiherald.com/news/local/crime/article257226397.html.
[3] *Bodycam footage shows Miami-Dade Police forcibly handling Dolphins star Tyreek Hill*.  (September 9, 2024. National Public Radio news article, https://www.npr.org/2024/09/09/nx-s1-5106872/tyreek-hill-police-bodycam-videos-miami-dolphins; *Miami-Dade cops release body-cam footage after Tyreek Hill cuffed before game. Take a look. (*September 11, 2024, Updated December 19, 2024.  Miami-Herald.  https://www.miamiherald.com/news/local/community/miami-dade/article292207400.html; *Miami-Dade cops release body-cam footage after Tyreek Hill cuffed before game. Take a look. (*September 11, 2024, Updated December 19, 2024.  Miami-Herald.  https://www.miamiherald.com/news/local/community/miami-dade/article292207400.html

amend his Complaint to add more claims, he will not be dismissing as moot any claims and has the legal right to proceed on his claims against Defendants. An arresting officer is required to conduct a reasonable investigation to establish probable cause, *Rankin*, 133, F.3d at 1435.  An officer may not "choose to ignore information that has been offered to him or her..[or] conduct an investigation in a biased fashion or elect not  to obtain easily discoverable facts'." *Kingsland v City of Miami,* 382, F.3d 1220 1229 (11th Cir. 2004).   A "police officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest.  Reasonable avenues of investigation must be pursued. Especially  when…it is unclear whether a crime has even taken place.  *BeVier v. Hucal,* 806 F.2nd 123, 128 (7th Cir. 1986). To determine whether an officer had probable cause for an arrest, we examine the events leading up to the arrest…; whether an officer had probable cause depends on the events leading up to the arrest…. *Lee v. Ferraro*, 284, F.3d 1188, 1195 (11th Cir. 2002); see also *District of Columbia v. Wesby*, 583 U.S.--- 138 S.Ct. 577, 199 L.Ed.2d 453 (2018); See Also *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 735 (11th Cir. 2010 (citations omitted.). A person can resist unlawful orders in arrest and excessive force, and can't lawfully be arrested for  protected speech. *Wright v. State*, 705 So. 2d 102, 2014 (Fla. 4th DCA 1998). A person may resist the use of excessive force in making the arrest. *State v. Holley*, 480 So.2d 94, 96 (Fla.1985). Even verbally protesting is not probable cause for an arrest but protected speech. §843.02, Fla. Stat. (1993). *City of Houston v. Hill*, 482 U.S. 451, 107 S.Ct. 2502, 96  L.Ed.2d 398 (1987).

      All Defendants in the instant case have been served the Complaint.  As evidenced herein and in Plaintiff's prior Opposition, Status Reports, and Motion To Lift Stay, the one thing we know for sure is that this Court does not know when Diaz will finally stop continuing his criminal cases for his arrest occurring three years ago in 2022, so to continue staying the instant case serves no public good or interest where an Officer seems to believes he has an ally in the Court to the point that he can preclude the citizenry from prosecuting their claims against him for violations of their civil rights committed by the Officer work in the county's police department.

      Based on the update provided [**SEE EXHIBIT A**], we are now on at least eight continuances of Diaz' 2022 criminal case on his continuances alone.  Although the Court stated in its paperless order that Plaintiff was "*speculating*" on what documents the MDCSAO is "withholding" (in its criminal investigation of Diaz already charged in 2022 and brought to trial), respectfully, this is not Plaintiff's counsel's first civil rights/1983 case, and we are well aware of the documents we need to prosecute this case, as well as what has already been released to the public

and cannot now be withheld, as shown to this Court in Plaintiff's prior opposition. *To wit*, Plaintiff's same undersigned counsel just prosecuted a non-lethal civil rights/1983 false arrest and excessive force case to verdict and won a unanimous jury verdict of $2,000,000.[00,]

## V.   CONCLUSION

Therefore, all above premises considered, Plaintiff Mr. Ortega, respectfully requests this Court:

1. Lift the current stay and deny Defendant's requested relief to for the Stay to remain, and Order Defendants to file an Answer within 20 calendar days.

Respectfully Submitted this 3rd day of May 2025

By: /s/ Rawsi Williams
Rawsi Williams, Esq. R.N.
State Bar No. 103201
RAWSI WILLIAMS LAW GROUP
701 Brickell Ave., STE 1550
Miami FL  33131
TEL:  888-RawsiLaw/888-729-7452
Email:rawsi@rawsi.com;
Ajoseph2@rawsi.com;
docservice@rawsi.com
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing document was filed with the District Clerk, Florida Southern District, and served electronically on all counsel of record via the ECF filing system on this **3rd** day of **May 2025.**

/s/ Rawsi Williams
Rawsi Williams, Esq. R.N.
State Bar No. 103201
RAWSI WILLIAMS LAW GROUP
701 Brickell Ave., STE 1550
Miami FL  33131
TEL:  888-RawsiLaw/888-729-7452
Email:rawsi@rawsi.com;
Ajoseph2@rawsi.com;
docservice@rawsi.com
Attorney for Plaintiff

**Service List**
Frank Allen, Esq., Co-Counsel for Plaintiff
Fabiana Cohen, Esq., Counsel for Defendant Miami-Dade County
David Trontz, Esq., Counsel for Defendant Joseph Diaz
David Donet, Esq., Counsel for Defendant Joseph Diaz