## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 24-22523-CIV-MOORE

**KENNY ORTEGA**,

      Plaintiff,

*v.*

**MIAMI-DADE COUNTY**, *et al.*,

      Defendants.

_____/

### MIAMI-DADE COUNTY'S MOTION TO DISMISS THE COMPLAINT

Defendant Miami-Dade County moves to dismiss Counts III and IV of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

### INTRODUCTION

This suit arises from an incident between Plaintiff Kenny Ortega and Miami-Dade Police Officer Joseph Diaz on July 25, 2020, which ultimately resulted in two arrests. On the one hand, Ortega was arrested for disorderly intoxication and resisting without violence, and all charges were later dropped. Then, two years later, the State Attorney's Office criminally charged Officer Diaz with official misconduct and falsifying a police report in connection with Ortega's arrest.

Based on this incident, Ortega seeks to hold Miami-Dade County liable under federal and state law. However, the Complaint fails to identify any County custom or policy that caused Ortega to suffer a constitutional deprivation. Accordingly, the claim for municipal liability under 42 U.S.C. § 1983 (Count III) fails as a matter of law. As for his state law claim (Count IV), it too should be dismissed, both as a shotgun pleading and because the factual allegations directly invoke

the County's entitlement to sovereign immunity. Accordingly, the Court should dismiss all counts against the County and dismiss Miami-Dade County as a defendant in this lawsuit.

## FACTUAL ALLEGATIONS

According to the Complaint, on July 25, 2020, Ortega was standing outside in his neighborhood when he was approached by Officer Diaz. Compl. ¶¶ 7, 9. Although "Ortega had not committed any crime, nor was he charged with any crime," Officer Diaz ordered him to "put his hands behind his back." *Id*. ¶¶ 8–9. Ortega claims he asked, "What for?" which prompted Officer Diaz to grab him by the neck and throw him down to the asphalt, causing his face to hit the ground. *Id*. ¶¶ 10–11. Officer Diaz then handcuffed and arrested Ortega for disorderly intoxication and resisting arrest without violence, without probable cause or arguable probable cause. *Id*. ¶¶ 11, 14. According to Ortega, Officer Diaz "falsified his police report alleging pre-textual and false actions by Mr. Ortega." *Id*. ¶ 13. All charges against Ortega were dropped. *Id*. ¶ 16. In January 2022, the Miami-Dade State Attorney's Office criminally charged Officer Diaz with official misconduct and falsifying a police report in connection with Ortega's arrest. *Id*. ¶ 15.

On July 2, 2024, Ortega filed this lawsuit against Officer Diaz and Miami-Dade County. The Complaint asserts five causes of action under both federal and state law: § 1983 claims alleging false arrest/imprisonment and excessive force against Officer Diaz (Counts I & II), a § 1983 municipal liability claim and a state law claim for respondeat superior against the County (Counts III & IV), and a state law battery claim against Officer Diaz (Count V). Both counts against the County, Counts III and IV, are due to be dismissed for failure to state a claim.

## LEGAL STANDARD

For a complaint to withstand a Rule 12(b)(6) motion, it "must state a claim for relief that is plausible, not merely possible." *Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem.*

*Co.*, 917 F.3d 1249, 1260 (11th Cir. 2019) (en banc). A claim is "plausible" if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). In considering a motion to dismiss, a court accepts well-pleaded factual allegations as true and construes them in the light most favorable to the plaintiff, *Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n*, 942 F.3d 1215, 1229 (11th Cir. 2019), but it may not accept conclusory allegations or legal conclusions, *Feldman v. Am. Dawn, Inc.*, 849 F.3d 1333, 1340 (11th Cir. 2017).

A complaint is also "subject to dismissal under Rule 12(b)(6) when its allegations—on their face—show that an affirmative defense bars recovery on the claim." *Marsh v. Butler County*, 268 F.3d 1014, 1022 (11th Cir. 2001) (en banc), *abrogated on other grounds by Twombly*, 550 U.S. 544. Sovereign immunity is an affirmative defense. *See Parker v. Am. Traffic Sol'ns, Inc.*, 835 F.3d 1363, 1368 (11th Cir. 2016).

## ARGUMENT

### I.    Count III Fails to State a Claim for Municipal Liability.

In Count III, Ortega seeks to hold the County liable for Officer Diaz's misconduct under 42 U.S.C. § 1983, but the claim fails because the Complaint does not sufficiently allege that Ortega's constitutional rights were violated *because of* an official policy or unofficial custom of Miami-Dade County. "It is well established that in a § 1983 case a city or other local governmental entity cannot be subject to liability at all unless the harm was caused in the implementation of 'official municipal policy.'" *Lozman v. City of Riviera Beach*, 585 U.S. 87, 95 (2018) (quoting *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978)). Rather, the County's liability "must be premised on a constitutional violation carried out by the County itself and cannot be based on

theories of *respondeat superior* or vicarious liability." *Knight ex rel. Kerr v. Miami-Dade County*, 856 F.3d 795, 819 (11th Cir. 2017).

There are two methods by which to establish municipal liability: "identify either (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county." *Grech v. Clayton County*, 335 F.3d 1326, 1329 (11th Cir. 2003). Under option one, to maintain an official policy claim, the aggrieved party must point to a "statement, ordinance, regulation, or decision officially adopted and promulgated . . . through [the municipality's] official decisionmaking channels." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988) (quoting *Monell*, 436 U.S. at 690-91). Ortega fails to identify any statement, ordinance, regulation, or decision officially adopted and promulgated by the County. In fact, Ortega concedes this point by alleging the County has a "custom and *unwritten* policy" of deliberate indifference. Compl. at 1 (emphasis added). Thus, Ortega cannot claim *Monell* liability based on an official policy and must pursue option two: the unofficial custom or practice route. But even there he fails.

**A.  The allegations advanced in support of Count III run afoul of *Twombly* and *Iqbal*.**

A plaintiff satisfies the "unofficial custom or practice" theory of *Monell* liability by alleging "a persistent and widespread practice and the government's actual or constructive notice of that practice." *Khoury v. Miami-Dade Cty. Sch. Bd.*, 4 F.4th 1118, 1131 (11th Cir. 2021) (cleaned up). Only a thoroughly engrained pattern of unconstitutional conduct will satisfy this standard so as to ensure that "a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Craig v. Floyd County*, 643 F.3d 1306, 1310 (11th Cir. 2011) (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403-404 (1997)). It is only when the municipality

4

has had "such a longstanding and widespread practice [that it] is deemed authorized by the policymaking officials because they must have known about it but failed to stop it." *Id.* (cleaned up).

In Count III, Ortega alleges that the County "engaged as a matter of policy, practice or custom in inadequate training, false arrest and imprisonment, excessive force, falsification of police reports, and inadequate supervision, and negligent retention of its officers and employees." Compl. ¶ 42. However, these allegations are too conclusory to pass muster under *Iqbal* and *Twombly*. When evaluating the sufficiency of a complaint, the Court must first identify allegations that are no more than conclusions and disregard them, and then, assuming the veracity of the remaining factual allegations, determine whether they plausibly give rise to an entitlement to relief. *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citing *Iqbal*, 556 U.S. at 679). The Complaint here contains only "conclusory allegations, unwarranted factual deductions[, and] legal conclusions masquerading as facts." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003) (cleaned up). This is simply not enough and "will not prevent dismissal." *Id.*

Count III is comprised exclusively of "naked assertions devoid of any further factual enhancement, *Iqbal*, 556 U.S. at 678 (cleaned up), that do not "nudge[]" any claim "across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570. Indeed, the entirety of Count III is nothing more than a list of conclusory allegations and legal conclusions:

> (1) "MIAMI-DADE COUNTY . . . engaged ***as a matter of policy, practice or custom*** in inadequate training, false arrest and imprisonment, excessive force, falsification of police reports, and inadequate supervision, and negligent training of is officers and employees"

> (2) "Defendant has a history of and ***a policy, practice, or custom***, either written or unwritten, permitting its Officers to illegally and unlawfully seize, detain, arrest, and/or confine citizens without probable or arguable probable cause nor reasonable suspicion."

5

(3) "Defendant has a history of and *a policy, practice or custom*, either written or unwritten, permitting its officers to unlawfully and illegally use physical force and/or more physical force than necessary or justifiable to seize, detain, arrest, and/or confine the citizens."

(4) "Defendant has a history of and *a policy, practice or custom*, either written or unwritten, of permitting its officers to unlawfully and illegally touch, grab, and/or strike the citizens and cause physical injury pursuant to an unlawful and illegal seizure, detention, arrest, and confinement."

(5) "Defendant has a history and *a policy, practice or custom*, either written or unwritten, of permitting officers to produce, file and submit false reports misrepresenting, manufacturing, and/or fabricating events, or evidence during an arrest or investigation of citizens."

(6) "[T]his conduct of the Defendant had become *a custom, pattern, practice, procedure, decision, and/or policy* of failing to prevent, and thereafter minimizing the consequences of, police misconduct."

Compl. ¶¶ 42, 47(a)–(d), 49 (emphasis added).

But a plaintiff cannot simply, and in a conclusory manner, allege, as Ortega does, that the County has a "policy, practice, or custom" of constitutional violations; rather, the complaint must include a sufficient factual predicate to support that claim. *See Hall v. Smith,* 170 F. App'x 105, 108 (11th Cir. 2006) (affirming dismissal of § 1983 claim against a municipality where the plaintiff "alleged no factual support for his conclusory statement that the [municipality] had a policy or custom of grossly inadequate supervision and training of its employees"); *Cannon v. Macon County,* 1 F.3d 1558, 1565 (11th Cir. 1993) (affirming dismissal of municipal § 1983 claim where plaintiff failed "to allege any facts whatsoever to indicate that the alleged violation was a result of a County policy or practice that would give rise to County liability"); *Perez v. Metro. Dade County*, No. 06-CV-20341-FAM, 2006 WL 4056997, at *2 (S.D. Fla. Apr. 28, 2006) ("the simple mention of a policy and/or custom is not enough, for a plaintiff must do something more than simply allege that such an official policy exists.") (cleaned up). The factual predicate must establish a widespread practice that is "so permanent and well settled as to constitute a custom or usage with the force of

law." *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (cleaned up).

The allegations in the Complaint fall far below this standard. Rather than identify a widespread practice of repeated constitutional violations, Ortega summarily alleges a series of purported "policies, customs, practices and/or procedures" without any facts to support those claims. These allegations are insufficient to establish a widespread pattern or practice of engrained constitutional violations by Miami-Dade County. A plaintiff cannot refer generally to a custom or practice "without any detail or actual predicate." *See Hollis v. Miami-Dade County*, No. 20-21930, ECF No. 25 at 4–7 (S.D. Fla. Feb. 25, 2021) (dismissing *Monell* claims for failure to allege sufficient factual support); *Cluff v. Miami-Dade County*, No. 21-23342, 2022 WL 700971, at *4 (S.D. Fla. Feb. 1, 2022), *aff'd,* 2022 WL 16757095 (11th Cir. 2022) (same); *Martin v. Miami-Dade County*, 661 F. Supp. 3d 1240, 1248–49 (S.D. Fla. 2023) (same), *rev'd in part on other grounds*, No. 23-10841, 2024 WL 1434329 (11th Cir. Apr. 3, 2024); *Moreno v. Miami-Dade County*, No. 22-22730, ECF No. 86 (S.D. Fla. Mar. 1, 2024) (same). In the absence of any facts to support the alleged customs of which he complains, Ortega's municipal liability claim fails.

**B. Plaintiff's reliance on his own experience is insufficient to plead a *Monell* claim.**

The scant factual allegations Ortega does offer relate exclusively to his own experience, or to irrelevant, immaterial incidents where no constitutional violations were found, requiring dismissal of Count III. To begin, it appears Ortega has simply broken up the facts surrounding his arrest and sprinkled the words "policy, custom, and practice" into his allegations to support a municipal liability claim. For example, the Complaint alleges that the County "engaged as a matter of policy, practice or custom in inadequate training, false arrest and imprisonment, excessive force, falsification of police reports, and inadequate supervision . . . with reckless disregard and deliberate indifference to the rights of the County's inhabitants . . . ***including and specifically, Kenny Ortega.***"

Compl. ¶ 42 (emphasis added). Similarly, the Complaint submits that the County has a widespread custom of minimizing police misconduct, based on Ortega's own arrest. *Id.* ¶ 50 ("Defendant took no disciplinary, investigative or administrative action whatsoever against those involved in the trampling of Mr. Ortega's civil rights, but instead made public statements supporting the conduct of Diaz and the employees involved."). However, Ortega's personal experience in this case does not give rise to a municipal liability claim against the County under *Monell*.

A plaintiff's own experiences alone will not satisfy the standard for municipal liability under *Monell*. *See e.g., Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1329-30 (11th Cir. 2015) (affirming dismissal of *Monell* claim alleging facts only about the incident at issue); *Floyd v. City of Miami Beach*, 730 F. App'x 838, 842 (11th Cir. 2018) ("Besides his own experience, [the plaintiff] offers only broad, conclusory allegations about the City's policies or customs"); *Guerra v. Palm Beach Cty. Sheriff's Off.*, 657 F. App'x 886, 893 (11th Cir. 2016) (plaintiff "fail[ed] to identify any examples beyond his own arrest of widespread unconstitutional conduct."); *Marantes v. Miami-Dade County*, 649 F. App'x 665, 673 (11th Cir. 2016) (plaintiff "pointed to only one incident . . . to show that the internal affairs process was ineffectual by custom—his own experience"); *Martin v. Wood*, 648 F. App'x 911, 915-16 (11th Cir. 2016) (plaintiff "failed to identify even a single arrest, outside of his own, much less another arrest that is remotely constitutionally suspect"); *Grider v. Cook*, 590 F. App'x 876, 882 (11th Cir. 2014) (plaintiff's allegations "involved only [] himself and not a widespread practice or custom"). Here, Plaintiff's reliance on his own experience as the main support for his allegation that the County has a multitude of widespread unconstitutional customs is fatal to his claim.

**C.  The three other incidents cited are insufficient to establish municipal liability.**

Perhaps in recognition of the paucity of his factual allegations, Plaintiff advances a footnote in support of Count III summarizing three incidents involving other Miami-Dade police officers. *See* Compl. at 10 n.1. However, none of these incidents are factually similar to this case. More importantly, three incidents over four years do not constitute persistent constitutional violations sufficient to establish a custom of unconstitutional conduct.

Ortega offers three examples—from 2016, 2018, and 2019—in support of his claim that the County has a custom of permitting officers to unlawfully detain citizens without probable cause, arguable probable cause, or reasonable suspicion. *See* Compl. at 10 n.1 (citing the incidents in support of ¶ 47(a), which relates to false arrest). However, none of the incidents cited actually involved a false arrest. According to Plaintiff, the 2019 incident concerned "deprivations of excessive force" in the course of a "highly publicized" police chase and deadly shooting; the 2016 incident concerned officers who pled guilty to federal charges for a "fraudulent scheme" to falsify multiple police reports; and the 2018 incident involved an officer throwing "a wheelchair-bound, double-amputee" to the ground for trespassing and panhandling. *Id*. To the extent Plaintiff cites these examples as support for his claim that the County has an unofficial custom of permitting unlawful arrests, which is what the Complaint alleges, his efforts fail as a matter of law because only prior incidents "substantially similar to the case at hand" can give rise to *Monell* liability through the unofficial custom route. *Mercado v. City of Orlando,* 407 F.3d 1152, 1152 (11th Cir. 2005) (prior incidents must "involv[e] similar facts"); *see also, e.g., Connick v. Thompson*, 563 U.S. 51, 63 (2011) (rejecting claim that prior *Brady* violations were sufficient to put the district attorney's office on notice of the need to train because "those incidents [were] not similar to the violation at issue"); *Weiland*, 792 F.3d at 1329 n.21 (affirming the dismissal of a *Monell* claim

where allegations about prior shootings did not include allegations that the shootings had given rise to "similar constitutional violations" as the ones allegedly suffered by the plaintiffs) (citation omitted). None of the incidents alleged involved a false arrest. Therefore, they cannot possibly serve as a basis to find the County had a widespread, persistent pattern of allowing its officers to arrest or detain people illegally.

But even assuming Plaintiff intended to cite these incidents in support of his municipal liability claims for patterns of excessive force and falsifying reports instead, his claim would still be subject to dismissal because three random incidents over four years hardly constitutes a widespread, persistent pattern. *Monell* requires plaintiffs to "allege specific facts detailing a widespread policy or custom, not just a couple of incidents and a conclusory assertion." *Watts v. City of Hollywood, Fla.*, 146 F. Supp. 3d 1254, 1272 (S.D. Fla. 2015) (Altonaga, C.J.). To that end, the constitutional violations must have occurred "for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of [county] employees." *Peterson v. City of Fort Worth*, 588 F.3d 838, 850 (5th Cir. 2009) (quoting *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984) (en banc)). In *Peterson*, the Fifth Circuit held that an allegation of **twenty-seven** incidents of excessive force over the four years prior to the plaintiff's incident, in a city with a police department of over 1,500 officers, did not "reflect a pattern that can be said to represent official policy of condoning excessive force." 588 F.3d at 851-52. "To hold otherwise," the court admonished, "would be effectively to hold the City liable on the theory of respondeat superior, which is expressly prohibited by *Monell*." *Id.* at 852.

Reiterating this principle, the Eleventh Circuit has stated the requirement as follows: "[t]he deprivations that constitute widespread abuse" sufficient to state a custom "must be obvious,

flagrant, rampant, and of continued duration." *Keith v. DeKalb County*, 749 F.3d 1034, 1048 (11th Cir. 2014) (cleaned up). Conversely, "random acts or isolated incidents are insufficient." *Depew v. City of St. Marys, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986). The Complaint here offers nothing more than three isolated incidents, which simply isn't enough. *See, e.g., Doe v. Miami-Dade County, Doe v. Miami-Dade County*, 797 F. Supp. 2d 1296, 1310 (S.D. Fla. 2011) (finding 51 instances in which police officers were accused of sexual misconduct over a span of four years insufficient to maintain *Monell* liability); *Craig*, 643 F.3d at 1311 (holding that a "single incident of unconstitutional activity" is not enough to prove a policy or custom on a *Monell* claim). If all that was required to state a *Monell* claim was a "catalog of disquieting events," then "practically every large metropolitan police force, it would seem, could be targeted for such liability." *Carter v. District of Columbia*, 795 F.2d 116, 123 (D.C. Cir. 1986). The bar for *Monell* liability is much higher than that, and these three outlier incidents do not clear it. Accordingly, because the Complaint does not identify a widespread custom of constitutional violations by Miami-Dade County, the *Monell* claim (Count III) must be dismissed.

## II.   Count IV Must Be Dismissed Because it is a Shotgun Pleading and the County is Entitled to Sovereign Immunity.

In Count IV, Ortega asserts a state-law claim for respondeat superior. Compl. at 14. For starters though, "under Florida law, respondeat superior . . . is a doctrine of liability, not itself a cause of action." *See Trump v. Clinton*, 626 F. Supp. 3d 1264, 1318 (S.D. Fla. 2022) (citing *Turner Murphy Co. v. Specialty Constructors, Inc.*, 659 So. 2d 1242, 1244 (Fla. 1st DCA 1995)). Because an independent cause of action for respondeat superior does not exist, Count IV should be dismissed as a matter of law. *See id.* (dismissing respondeat superior claim because "no independent cause of action exists against any of the named Defendants.").

**A.  Count IV must be dismissed as a shotgun pleading.**

Even if the Court were inclined to treat Count IV as a discreet cause of action, it is unclear what the nature of that claim would be because it is a shotgun pleading. Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often referred to as "shotgun pleadings." *Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). Rule 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 10(b) further provides that "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count or defense."

In *Weiland*, the Eleventh Circuit identified four types of shotgun pleadings. "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1321. Here, the Complaint "commits the sin of not separating into a different count each cause of action or claim for relief." *Id.* at 1322-23. Specifically, Count IV appears to be a catch-all claim for respondeat superior, referencing the myriad "acts of false arrest, false imprisonment, excessive force," as well as "wrongful and/or negligent acts." Compl. ¶¶ 57, 59. But each of these is a separate and distinct legal theory of liability and it is impermissible to lump multiple claims within the same count. *See, e.g., Burke v. Custom Marine Group*, 847 F. App'x 578, 581 (11th Cir. 2021) (affirming dismissal of complaint as a shotgun pleading where distinct theories of liability were not asserted independently); *Miles v. Carnival Corp.*, No. 24-22767, 2025 WL 587055, at *3 (S.D. Fla. Feb. 24, 2025) (dismissing as an improper shotgun pleading one count for negligence containing multiple theories of negligence liability); *Perez v. City of Opa-Locka*, 629 F. Supp. 3d 1164, 1176 (S.D. Fla. 2022) ("[C]ombining

two distinct claims into a single count constitutes an impermissible 'shotgun pleading.'") (quoting *Weiland*, 792 F.3d at 1322-23 & n.13).

Equally improper, the Complaint submits numerous causes of action premised upon the very same set of facts, without specifying which allegations give rise to which claims. Because the Complaint "re-alleges and incorporates paragraphs 1–16" within Count IV, it is impossible to know which factual allegations are intended to support which claims for relief. Compl. ¶ 55; *see Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996) (noting that a complaint "is a perfect example of 'shotgun' pleading when "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief"). For example, Ortega claims the County is liable for its employees' "wrongful and/or negligent acts," as well as Officer Diaz's "acts of false arrest, false imprisonment, excessive force, and all other claims asserted [ ] against Plaintiff." Compl. ¶¶ 57, 59. Yet he does not specify which factual allegations are meant to support which claims. Similarly, Ortega pleads "in the alternative" that Officer Diaz "did not commit the False Arrest/False Imprisonment and Excessive Force [ ] in bad faith or with malicious purpose, or in a manner exhibiting willful and wanton disregard of human rights, safety or property," *id*. ¶ 60, but he does not plead any factual allegations to support this alternate theory. In other words, the Complaint offers no factual scenario to support Ortega's claim that his arrest was *not* committed in "bad faith or with malicious purpose."

The Eleventh Circuit has "urged district courts to take a firm hand" when faced with shotgun pleadings and to "whittle cases down to the few triable claims, casting aside the many non-triable ones through dismissals where there is a failure to state a claim and through summary judgment where there is no genuine issue of material fact." *Chapman v. AI Transport, Inc.*, 229 F.3d 1012, 1027 (11th Cir. 2000). In its current state, Count IV does not identify a single cognizable

cause of action, nor does it identify which facts trigger the multitude of legal theories contained

therein. Ortega cannot "cram multiple, distinct theories of liability into one claim" because each

theory "is a separate cause of action that must be asserted independently and with corresponding

supporting factual allegations*." Ortiz v. Carnival Corp.*, No. 20-24838, 2020 WL 6945958, at *1

(S.D. Fla. Nov. 25, 2020). Accordingly, Count IV should be dismissed as an improper shotgun

pleading.

### B. Miami-Dade County is entitled to sovereign immunity on Count IV.

Beyond the deficiencies already identified, the County is also entitled to sovereign

immunity as to Count IV. The doctrine of sovereign immunity provides that the County, as a

political subdivision of the State of Florida, is immune from suit except in those circumstances

where the State has given its consent to be sued." *Moore v. Miami-Dade County*, 502 F. Supp. 2d

1224, 1234-35 (S.D. Fla. 2007) (citing *Cauley v. City of Jacksonville*, 403 So. 2d 379, 381 (Fla.

1981)). While Florida Statute § 768.28 partially waives sovereign immunity in limited

circumstances, it also provides that: "[t]he state or its subdivisions **are not liable** in tort for the

acts or omissions of an officer, employee or agent . . . committed in bad faith or with malicious

purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or

property." Fla. Stat. § 768.28(9)(a) (emphasis added). This means that "in any case involving the

actions of a county employee, either the county or the employee can be held liable, but not both."

*Moore*, 502 F. Supp. 2d at 1235 (citing *McGhee v. Volusia County*, 679 So. 2d 729, 733 (Fla.

1996)).

Florida courts have routinely held that a governmental entity is immune from suit where

its employees' actions were malicious, in bad faith, or showed wanton disregard for safety. *See,*

*e.g., City of Fort Lauderdale v. Todaro*, 632 So. 2d 655, 656-58 (Fla. 4th DCA 1994) (reversing

verdict against city where jury found employee acted with willful disregard for safety); *Willis v. Dade Cty. Sch. Bd.*, 411 So. 2d 245, 246 (Fla. 3d DCA 1982) (affirming trial court's dismissal of complaint against school board that alleged "malicious" assault and battery). Likewise, courts in this District repeatedly reject plaintiffs' attempts to hold the County liable where the conduct alleged is wanton and willful—irrespective of whether those exact words are used in the pleading—and routinely dismiss such state law claims based on sovereign immunity. *See, e.g.*, *Jones v. City of Palm Beach Gardens*, No. 16-81247, 2022 WL 2191689, at *3–*4 (S.D. Fla. June 17, 2022) (Scola, J.); *Acosta v. Miami-Dade County*, No. 16-23241, ECF No. 37 at 10–11 (S.D. Fla. Sept. 8, 2020) (Ungaro, J.); *Casado v. Miami-Dade County*, 340 F. Supp. 3d 1320, 1330 (S.D. Fla. 2018) (O'Sullivan, M.J.) (consent case); *Gaviria v. Guerra*, No. 17-23490, 2018 WL 1876124, at *11 (S.D. Fla. Apr. 19, 2018) (Altonaga, C.J.); *Harewood v. Miami-Dade County*, No. 16-21874, ECF No. 37 at 12–14 (S.D. Fla. Nov. 14, 2016) (**Moore, J.**); *Alicea v. Miami-Dade County*, No. 13-21549, ECF No. 95 at 4–6 (S.D. Fla. Oct. 27, 2014) (Bloom, J.); *Printemps v. Miami-Dade County*, 2017 WL 2555631, at *2–*3 (S.D. Fla. June 9, 2017) (Ungaro, J.); *Mena v. Miami-Dade County*, No. 14-20030, 2014 WL 3667806, at *2 (S.D. Fla. July 22, 2014) (Moreno, J.); *Blue v. Miami-Dade County*, No. 10-23599, 2011 WL 2447699, at *2-*3 (Huck, J.); *Thomson v. Davenport*, No. 09-21708, ECF No. 59 at 9–10 (S.D. Fla. June 16, 2010) (Gold, J.); *Knight v. Miami-Dade County*, No. 09-23462, ECF No. 34 at 10–11 (S.D. Fla. June 23, 2010) (Graham, J.); *Terry v. Rodriguez*, No. 09-23726, 2010 WL 2342382, at *2 (S.D. Fla. June 7, 2010) (Hoeveler, J.); *Sanchez v. Miami-Dade County*, No. 06-21717, 2007 WL 1746190, at *4 (King, J.); *Moore*, 502 F. Supp. 2d at 1234 (Gold, J.).

Pertinent here, the term "'bad faith' . . . has been equated with the actual malice standard," and "willful and wanton conduct is generally something more than ordinary negligence but less

than deliberate conduct." *Butler v. Gualtieri*, 41 F.4th 1329, 1337-37 (11th Cir. 2022) (quoting *Peterson v. Pollack*, 290 So. 3d 102, 109 (Fla. 4th DCA 2020), then *Lemay v. Kondrk*, 923 So. 2d 1188, 1192 (Fla. 5th DCA 2006)). And the allegations set forth in the Complaint can only be read as amounting to bad faith or willful and wanton conduct on the part of Officer Diaz, thus entitling the County to sovereign immunity. Specifically, Ortega claims he was just standing outside in his neighborhood when, without probable cause, arguable probable cause, or even reasonable suspicion, Officer Diaz ordered him to put his hands behind his back. Compl. ¶¶ 7–9. In response, Ortega asked, "What for?" prompting Officer Diaz to "grab [him] by the neck, thr[o]w [him] down to the asphalt," causing his face to hit the ground. *Id*. ¶ 11. Officer Diaz then "straddled Mr. Ortega's back, handcuffed and arrested him." *Id*. During this "unlawful and unprovoked take-down and/or take-down by-the-neck," Ortega claims he was injured. *Id*. ¶ 12. Then, according to Plaintiff, Officer Diaz "falsified his police report alleging pre-textual and false actions by Mr. Ortega, for which Officer Diaz was criminally charged with official misconduct." *Id*. ¶¶ 13–14. These allegations, incorporated into Count IV of the Complaint,[1] directly invoke the County's entitlement to sovereign immunity.

When faced with similar allegations, courts in this District have found the County is entitled to sovereign immunity. For instance, in *Harewood v. Miami-Dade County*, this Court dismissed state law claims against the County where a police officer was alleged to have intentionally restrained the plaintiff without legal authority, slammed him to the ground, and tased him three times. *See* Order Granting Motion to Dismiss 13, No. 16-21874, ECF No. 37 (S.D. Fla. Nov. 14, 2016). Because the allegations, on their face, "state[d] a claim for 'wanton' and 'malicious' acts," this Court found they "[did] not give rise to municipal liability under Florida's

---

[1] Compl. ¶ 55 ("Plaintiff re-alleges and incorporates paragraphs 1–16 as if pled herein.").

waiver of sovereign immunity." *Id.* (quoting *Mena*, 2014 WL 3667806, at *2). Similarly, in *Casado v. Miami-Dade County*, Magistrate Judge O'Sullivan concluded that "the factual allegations of repeatedly punching the plaintiff in the face, slamming him on the hood of his car, arresting him without probable cause, and fabricating evidence . . . constitute[d] conduct that can only be described as 'committed in bad faith or with malicious purpose.'" 340 F. Supp. 3d at 1330. In *Gaviria v. Guerra*, Chief Judge Altonaga found that the plaintiff's allegations—that an officer tased him and struck him repeatedly when he was on the ground even though he was not resisting— could not be construed "as describing anything less than acts 'committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.'" 2018 WL 1876124, at *11. Also, in *Alicea v. Miami-Dade County*, Judge Bloom granted the County sovereign immunity where the plaintiff's state law claims derived from the actions of a single officer who approached his lawfully parked car, cursing and yelling, and—when he objected to that conduct—pulled him from the car, beat and restrained him until another officer arrested him. Order 5–6, No. 13-21549, ECF No. 95 (S.D. Fla. Oct. 27, 2014).

Each of these cases—*Harewood*, *Casado*, *Gaviria*, and *Alicea*—was decided at the motion to dismiss stage and presented factual allegations that an individual officer used unnecessary force to unlawfully arrest a nonthreatening person. So too here. Ortega alleges that Officer Diaz grabbed him by the neck and threw him down to the pavement, causing his face to hit the ground, and then straddled his back to arrest him when all he did was ask why he had to put his hands behind his back. Compl. ¶¶ 9–11. Asking "what for" when told to put his hands behind his back cannot be construed as a threat that would have justified the use of force alleged here. *See Davis v. Williams*, 451 F.3d 759, 766-67 (11th Cir. 2006) (holding that plaintiff who posed "simple inquir[ies]" as to why police officers were taking certain actions "did not actively resist arrest" to justify use of

force); *Tolston v. City of Atlanta, Georgia*, 723 F. Supp. 3d 1263, 1311 (N.D. Ga. Mar. 14, 2024) (holding that a subject did not actively resist arrest by asking the officer why he was "treating [him] like that"). Under these circumstances, force of any kind was "neither necessary nor appropriate," so "the type of force and reason for using that force alleged here . . . cross the line." *Blue*, 2011 WL 2447699, at *3. Therefore, the acts by Officer Diaz can only be characterized as acts committed "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a).

Plaintiff's claim that that Officer Diaz "falsified his police report alleging pre-textual and false actions by Mr. Ortega," further supports the conclusion that Officer Diaz acted in bad faith. Compl. ¶ 13. Ortega was charged with disorderly intoxication and resisting arrest without violence. *Id*. ¶ 14. According to the Complaint, it was Officer Diaz's false claims that gave rise to those charges. *Id*. ¶¶ 13–14. Allegations that Officer Diaz essentially lied in a police report to justify an unlawful arrest can "only equate with the kind of intentional, malicious misconduct by a state employee that does not give rise to municipal liability under Florida's waiver of sovereign immunity statute." *Printemps*, 2017 WL 2555631, at *3. By comparison, in *Printemps*, Judge Ungaro found that the County was entitled to sovereign immunity where the plaintiff alleged that an officer created facts and manufactured evidence to include in his probable cause affidavit and offense incident report. *Id*. Similarly, in *Casado*, Judge O'Sullivan listed the plaintiff's allegation that the officer "fabricat[ed] evidence" as a factor contributing to his ruling that the County was entitled to sovereign immunity. 340 F. Supp. 3d at 1330. Judge Bloom reached the same result in a case where the plaintiff alleged that the officer "made false statements and material omissions with regard to [his] arrest." Order 5, *Alicea*, No. 13-21549, ECF No. 95.

Finally, the Complaint submits that Officer Diaz was ***criminally charged*** for his alleged conduct. Specifically, the State Attorney's Office charged Officer Diaz with official misconduct and falsifying a police report in his arrest of Ortega. Compl. ¶ 15. Under Florida law, the crime of official misconduct, a third-degree felony, makes it "unlawful for a public servant . . . to knowingly and intentionally . . . cause unlawful harm to another, by . . . [f]alsifying . . . any official record or official document." Fla. Stat. § 838.022(1)(a). Likewise, it is a first-degree misdemeanor to knowingly make a false report to law enforcement. *See* Fla. Stat. § 837.05(1)(a). Under the facts pled here, "there is not even a pretense of a lawful right in the performance of the acts" by Officer Diaz. *Gregory v. Miami-Dade County*, 719 F. App'x 859, 874 (11th Cir. 2017) (quoting *McGhee*, 679 So. 2d at 733). Indeed, Ortega's claim that Officer Diaz violated his constitutional rights by committing criminal acts "connote[s] conduct much more reprehensible and unacceptable than mere intentional conduct and can only be characterized as stating [a] claim[] for acts done in bad faith or in a willful and wanton manner." *Id*. Accordingly, the County is entitled to sovereign immunity and dismissal of Count IV.

## **<u>CONCLUSION</u>**

For the foregoing reasons, Counts III and IV—the only two claims against Miami-Dade County—must be dismissed with prejudice.

Dated: May 27, 2025.                              Respectfully Submitted,

**GERALDINE BONZON-KEENAN**
Miami-Dade County Attorney

By: *<u>/s/ Jennifer L. Hochstadt</u>*
Jennifer L. Hochstadt (Fla. Bar No. 56035)
By: *<u>/s/ Fabiana Cohen</u>*
Fabiana Cohen (Fla. Bar No. 119732)
Assistant County Attorneys
Stephen P. Clark Center
111 N.W. First Street, Suite 2810
Miami, FL 33128

Telephone: (305) 375-5151
E-mails: jennifer.azar@miamidade.gov;
cohenf@miamidade.gov
*Counsel for Miami-Dade County*