## EXHIBIT D

## LIST OF CITATIONS

- *James v. Conley*, No. 23-CV-24467-MOORE/Elfenbein, ECF No. 89 (S.D. Fla. July 23, 2024) (Elfenbein, J.)

- *Go Mobile Flooring, LLC v. Blue Banyan Sols., Inc.*, 663 F. Supp. 3d 1294 (M.D. Fla. 2023)

- *Lewis v. Cabana Coaches, LLC*, No. 12-CV-20783-MOORE/Torres, 2012 WL 12896353 (S.D. Fla. Oct. 19, 2012)

- *De Varona v. Discount Auto Parts, LLC*, No. 12-CV-20714-UNGARO/Torres, 2012 WL 2334703 (S.D. Fla. June 19, 2012)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 23-CV-24467-MOORE/Elfenbein

**THOMAS RAYNARD JAMES**,

      Plaintiff,

v.

**DETECTIVE KEVIN CONLEY**, *et al.*,

      Defendants.

_____/

**ORDER ON DEFENDANTS' ORAL MOTION TO COMPEL**
**BETTER ANSWERS TO INTERROGATORIES 11 AND 12, ECF NO. [85]**

**THIS CAUSE** is before the Court on Defendants' Notice of Hearing (the "Notice"), ECF No. [84], in which Defendants alerted the Court that they required the Court's assistance with a discovery dispute. *See* ECF No. [83]; ECF No. [84]. Specifically, Defendants noted that, as it relates to Plaintiff's Supplemental Responses to Defendants' First Set of Interrogatories, "the parties disagree on Plaintiff's supplemental answers to interrogatory numbers 11 and 12." *See* ECF No. [84] at 1. The Court held a hearing on the issue on July 11, 2024 (the "Hearing"). *See* ECF No. [82]; ECF No. [86]. During the Hearing, Defendants made an oral motion to compel better answers to Interrogatory Numbers 11 and 12 (the "Oral Motion to Compel"). *See* ECF No. [85].

In the Notice, Defendants include Interrogatory Numbers 11 and 12, which request information about the kinds and amounts of damages Plaintiff claims along with the calculations used to reach those amounts and the documents supporting them. *See* ECF No. [84-2] at 9–10. Plaintiff's supplemental answers to interrogatories 11 and 12, which were included in the Notice, indicated that he "seeks compensatory and punitive damages" and would "ask a jury to award him

54.4 million dollars, an amount of 1.7 million dollars per year . . . based on . . . 32 known verdicts from across the country." *See* ECF No. [84-2] at 47–48 (noting that "[f]ederal juries in jurisdictions across the country award an average of $1,730,151.32 per year of wrongful incarceration"). Plaintiff clarified in a later email exchange, which is also included in the Notice, that he would "be seeking compensation for . . . 'non-economic damages'"; that "[b]y definition these damages are not subject to any prescribed formula or set amount"; and that he would "therefore ask the jury to determine an amount they deem appropriate." *See* ECF No. [84-2] at 56.

At the Hearing, Defendants presented caselaw from this District indicating that plaintiffs are not required to provide computations for non-economic damages during trial or to disclose any such computations or calculations during discovery if they do not intend to ask the jury for a specific dollar amount or range. *See* ECF No. [84-4] at 3; ECF No. [86]. But if plaintiffs intend to suggest any amount or range of non-economic damages to the jury at any point or manner during trial, they are obligated to disclose in discovery the calculation and the supporting documents used to reach that amount or range. *See* ECF No. [84-4] at 3; ECF No. [86]. Plaintiff thereafter stipulated in open court that he would not suggest any amount or range of non-economic damages to the jury and instead would leave the non-economic damages determination completely to the jury's discretion. *See* ECF No. [86].

Based on Plaintiff's stipulation during the Hearing, the Oral Motion to Compel, as it relates to **Interrogatory Number 11**, ECF No. [85], is **DENIED**. If Plaintiff decides not to disclose a computation for non-economic damages during discovery, he will be precluded from suggesting any amount or range of non-economic damages to the jury at trial. *See Lewis v. Cabana Coaches, LLC*, No. 12-CV-20783, 2012 WL 12896353, *3 (S.D. Fla. Oct. 19, 2012). However, if Plaintiff later decides he intends to suggest an amount or range of non-economic damages to the jury at

trial, he is obligated to *timely* disclose that calculation in discovery so as to give Defendants sufficient time to obtain any necessary discovery related to that calculation. *Id.*

As it relates to Interrogatory Number 12, at the Hearing, Defendants agreed that the Oral Motion to Compel was no longer an issue in light of Plaintiff's stipulation. Accordingly, the Oral Motion to Compel as to **Interrogatory Number 12**, ECF No. [85], is **DENIED as moot**.

**DONE AND ORDERED** in Chambers in Miami, Florida on July 23, 2024.

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc: All counsel of record

663 F.Supp.3d 1294
United States District Court, M.D. Florida,
Tampa Division.

GO MOBILE FLOORING, LLC, Plaintiff,

v.

BLUE BANYAN SOLUTIONS, INC., Defendant.

Case No: 8:20-cv-3098-CEH-JSS
|
Signed March 23, 2023

**Synopsis**

**Background:** Customer brought action in diversity against service provider, alleging under California law breach of contract for provision of information technology services. Service provider counterclaimed alleging breach of that contract. Service provider moved for partial summary judgment and it moved to exclude testimony of customer's expert.

**Holdings:** The District Court, Charlene Honeywell, J., held that:

[1] customer's damages disclosures containing neither computations nor supporting documents were inadequate;

[2] exclusion of damages evidence for customer's inadequate damages disclosures would have been overly harsh sanction;

[3] rule governing pleading special matters did not prevent customer from presenting special damages at trial;

[4] genuine issue of material fact as to whether customer was damaged by alleged failure of service provider to complete particular services precluded summary judgment;

[5] testimony of expert would assist trier of fact, and therefore relevance prong of analysis for admission of expert testimony was satisfied;

[6] opinions of witness who was proffered as expert based on qualifications that were comprised solely of his experience in field, and his conclusory assertions without revealing methodology behind them, were not reliable; and

[7] Court had to defer ruling on *Daubert* motion and permit customer, as proponent of expert testimony, to lay foundation at trial.

Motions denied.

**Procedural Posture(s):** Motion for Summary Judgment; Motion to Exclude Expert Report or Testimony.

West Headnotes (42)

**[1]** **Summary Judgment** 👉 What constitutes "genuine" issue or dispute

On a motion for summary judgment, issues of fact are "genuine" only if a reasonable jury, considering the evidence presented, could find for the nonmoving party. Fed. R. Civ. P. 56(c)(2).

**[2]** **Summary Judgment** 👉 Effect of applicable substantive law

On a motion for summary judgment, a fact is "material" if it may affect the outcome of the suit under governing law. Fed. R. Civ. P. 56(c)(2).

**[3]** **Summary Judgment** 👉 Burden of Proof
**Summary Judgment** 👉 Shifting burden

The party moving for summary judgment bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact; that burden can be discharged if the moving party can show the court that there is an absence of evidence to support the nonmoving party's case, and only when that burden has been met does the burden shift to the non-moving party. Fed. R. Civ. P. 56(c)(2).

**[4]** **Contracts** 👉 Grounds of action

Under California law, the existence of damages as a result of the breach is an element of a cause of action for breach of contract.

**[5]**    **Contracts** 🔑 Grounds of action

To satisfy the damages element for a claim alleging breach of contract under California law, a plaintiff must show appreciable and actual damages that are clearly ascertainable in both their nature and origin.

**[6]**    **Federal Civil Procedure** 🔑 Failure to respond;  sanctions

Customer's damages disclosures containing neither computations nor supporting documents were inadequate under Federal Rules of Civil Procedure, in its action against service provider alleging under California law breach of contract for provision of information technology services; customer's list of damages provided only category and corresponding amount, without any explanation as to how it calculated that amount. Fed. R. Civ. P. 26(a)(1), 26(e).

2 Cases that cite this headnote
More cases on this issue

**[7]**    **Federal Civil Procedure** 🔑 Failure to respond;  sanctions

To comply with the requirement under the Federal Rules of Civil Procedure for initial discovery disclosure, parties must perform some analysis, and cannot rely on general statements. Fed. R. Civ. P. 26(a)(1).

2 Cases that cite this headnote

**[8]**    **Federal Civil Procedure** 🔑 Failure to respond;  sanctions

A violation of a discovery disclosure obligation under the Federal Rules of Civil Procedure that occurs close in time to the trial date is more likely to prejudice the other party in a concrete manner, as required to be sanctionable. Fed. R. Civ. P. 26(a)(1), 26(e), 37(c)(1).

**[9]**    **Federal Civil Procedure** 🔑 Failure to respond;  sanctions

Dilatory reaction to an inadequate discovery disclosure can impact the harm analysis for determining the sanction for a violation of a disclosure obligation under the Federal Rules of Civil Procedure. Fed. R. Civ. P. 26(a)(1), 26(e), 37(c)(1).

**[10]**    **Federal Civil Procedure** 🔑 Failure to respond;  sanctions

Courts are more likely to find prejudice or harm from an inadequate discovery disclosure, which may affect the resulting sanction under the Federal Rules of Civil Procedure, where the opposing party has made repeated requests or brought the issue to the court's attention. Fed. R. Civ. P. 26(a)(1), 37(c)(1).

**[11]**    **Federal Civil Procedure** 🔑 Failure to respond;  sanctions

Sanction of some kind was warranted for customer's inadequate damages disclosures under Federal Rules of Civil Procedure, in its action against service provider alleging under California law breach of contract for provision of information technology services, since customer did not offer any justification or explanation for its failure to comply with governing rule, insisting that it disclosed all that was necessary, discovery closed and dispositive motions deadline passed without required disclosures, which customer still did not make even after service provider raised issue in motion for partial summary judgment, and reopening discovery and moving those deadlines would cause delay. Fed. R. Civ. P. 26(a)(1), 26(e), 37(c)(1), 56.

More cases on this issue

**[12]**    **Federal Civil Procedure** 🔑 Failure to respond;  sanctions

Requiring  customer  to  cure  its  discovery violation   immediately   by   amending   its

disclosures to provide service provider with detailed computation of each category of damages it claimed, making available for inspection and copying documents or other evidentiary material on which each computation was based, allowing service provider to file motion to reopen discovery to extent directly necessitated by customer's amended disclosures, and requiring customer to pay all expenses and fees incurred by service provider in following up on amended disclosures, but only those fees and costs that were directly attributable to amended disclosures, was appropriate sanction for customer's damages disclosures that were inadequate under Federal Rules of Civil Procedure, in its action against service provider alleging under California law breach of contract for provision of information technology services. Fed. R. Civ. P. 26(a)(1), 37(c)(1).

2 Cases that cite this headnote
More cases on this issue

**[13]**    **Federal Civil Procedure** 🔑   Failure to respond;  sanctions

Exclusion of damages evidence for customer's inadequate damages disclosures under Federal Rules of Civil Procedure would have resulted in dismissal of customer's entire claim, and therefore it would have been overly harsh sanction in its action against service provider alleging under California law breach of contract for provision of information technology services, since violation did not occur willfully or in bad faith, prejudice to service provider was relatively minimal in that provider had some notice of bases for customer's damages requests even without underlying calculations and documents, action was not currently scheduled for trial, provider did not bring issue to court's attention until after discovery closed which significantly contributed to any resulting delay, and provider did not provide evidence that it communicated with customer to request more fulsome damages disclosures after receiving insufficient responses to its interrogatories. Fed. R. Civ. P. 26(a)(1), 34, 37(c)(1).

More cases on this issue

**[14]**    **Federal Civil Procedure** 🔑   Special damage

Service provider received actual notice of customer's intent to seek special damages through customer's responses to provider's interrogatories, and therefore rule governing pleading special matters did not prevent customer from presenting them at trial in action against service provider alleging under California law breach of contract for provision of information technology services; although second amended complaint did not request special damages or refer to any damages in form of lost profits or revenue, customer identified two categories of damages in its responses to customer's interrogatories that were based on "lost revenue," and other categories of identified damages also could fall under label of special damages, such as "Pay Now," in which customer apparently sought compensation for salary of employee it had to dedicate to collections. Fed. R. Civ. P. 9(g).

More cases on this issue

**[15]**    **Damages** 🔑   General and special damage

Under California law, contractual damages are either "general" or "special."

**[16]**    **Damages** 🔑   General and special damage

On a breach of contract claim under California law, "special damages" are losses that do not arise directly and inevitably from the breach, but are secondary or derivative losses arising from circumstances that are particular to the contract or the parties.

**[17]**    **Damages** 🔑   Loss of Profits

Under California law, lost profits may be either "general" or "special" damages.

**[18]**    **Damages** 🔑   General or special damage

Where lost profits are special damages, rather than general, California law provides that they must be pleaded with particularity.

**[19]     Federal Courts** 🔑 Pleading

Federal law governs the procedural issue of a plaintiff's pleading requirements in a federal case under diversity jurisdiction. 28 U.S.C.A. § 1332.

**[20]     Federal Civil Procedure** 🔑 Special damage

The purpose of rule governing pleading special matters is to ensure that a defendant is not unfairly surprised by claims for certain types of damages not explicitly pled. Fed. R. Civ. P. 9(g).

1 Case that cites this headnote

**[21]     Federal Civil Procedure** 🔑 Certainty, Definiteness and Particularity

Courts may take a lenient and practical reading of Federal Rule of Civil Procedure governing pleading special matters by considering whether the defendant has received actual notice from any source on the basis that such an approach is consistent with a strong federal policy favoring resolution of a case on the merits. Fed. R. Civ. P. 9(g).

**[22]     Federal Civil Procedure** 🔑 Pleading over

At early stage of case, motion to dismiss special damages claim for failure to plead them with particularity may be due to be granted with leave to amend. Fed. R. Civ. P. 9(g), 12(b), 15.

**[23]     Federal Civil Procedure** 🔑 Special damage

Courts are reluctant to preclude damages for failure to comply with the Federal Rule of Civil Procedure governing pleading special matters where the defendant has received actual notice of the plaintiff's request through another means. Fed. R. Civ. P. 9(g), 12(b).

**[24]     Damages** 🔑 Mode of estimating damages in general

Were only lost profits, and not lost revenue, recoverable?**Yes**

Customer could not recover lost revenue, only lost profits, in its action against service provider alleging under California law breach of contract for provision of information technology services.

More cases on this issue

**[25]     Damages** 🔑 Injuries affecting limited or special rights or interests

Under California law, damages awards in injury to business cases are based on "net profits," which are gains made from sales after deducting value of labor, materials, rents, and all expenses, together with interest of capital employed.

**[26]     Damages** 🔑 Certainty as to amount or extent of damage

**Damages** 🔑 Weight and Sufficiency

Under California law, certainty as to the amount of damages is not required, and a party will not be denied recovery simply because precise proof of the amount of damage is not available.

**[27]     Contracts** 🔑 Questions for Jury

**Summary Judgment** 🔑 Contracts in general

Genuine issue of material fact as to whether customer was damaged by alleged failure of service provider to complete particular services precluded summary judgment in customer's action under California law against service provider alleging breach of contract that listed compensation on "time and materials" basis. Fed. R. Civ. P. 56.

More cases on this issue

**[28]     Contracts** 🔑 Questions for Jury

**Summary Judgment** 🔑 Contracts in general

Genuine issue of material fact as to whether customer breached contract for provision of

*Go Mobile Flooring, LLC v. Blue Banyan Solutions, Inc., 663 F.Supp.3d 1294 (2023)*

information technology services that listed compensation on "time and materials" basis by not paying invoices from service provider precluded summary judgment on provider's counterclaim in customer's breach of contract action under California law. Fed. R. Civ. P. 56.

More cases on this issue

**[29]    Evidence  👈  Factors, Tests, and Standards in General**

In performing its gatekeeping function, a district court must consider whether: (1) the expert is qualified to testify competently regarding the matters he intends to address, (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. Fed. R. Evid. 702.

**[30]    Evidence  👈  Factors, Tests, and Standards in General**

Three discrete inquiries to determine admissibility of expert testimony are qualifications, reliability, and relevance; although there is some overlap among these inquiries, they are distinct concepts that court and litigants must not conflate. Fed. R. Evid. 702.

**[31]    Evidence  👈  Presumptions, Burden, and Degree of Proof**

The burden of laying the proper foundation for the admission of expert testimony is on the party offering the expert, and the admissibility must be shown by a preponderance of the evidence. Fed. R. Evid. 702.

**[32]    Evidence  👈  Discretion of court in general**

The admission of expert testimony is a matter within the discretion of the district court, which is afforded considerable leeway in making its determination. Fed. R. Evid. 702.

**[33]    Evidence  👈  Means of attacking expert**

A district court's gatekeeper role is not intended to supplant the adversary system or the role of the jury; vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence. Fed. R. Evid. 702.

**[34]    Evidence  👈  Necessity of both reliability and relevance**

Judge's role in determining admissibility of expert testimony is to keep unreliable and irrelevant information from jury because of its inability to assist in factual determinations, its potential to create confusion, and its lack of probative value. Fed. R. Evid. 702.

**[35]    Evidence  👈  Contracts and written instruments**

Testimony of expert would assist trier of fact, and therefore relevance prong of analysis for admission of expert testimony was satisfied, in customer's action under California law claiming breach of contract that allegedly obligated service provider to provide services only at hourly rate, without any expectation as to completion of specific projects or deliverables, or any time frame or standard of care under which services would be provided, since expert could explain various tasks and projects described in contract's "Scope" section, which involved technical terms that were outside knowledge of average layperson, his opinions related to provider's use, or misuse, of hours for which it billed customer, and, even though he did not calculate monetary amounts, he would explain consequences of allegedly defective services. Fed. R. Evid. 702.

More cases on this issue

**[36]    Federal Civil Procedure  👈  Requirement to meet and confer**

A party's failure to comply with the local rule to confer, or attempt to confer, with an adversary in good faith before filing any motion, and to certify that they have done so, is a basis to deny the motion without prejudice.

**[37]** **Evidence** 🔑 Relevance and materiality

Expert testimony is relevant and will assist the trier of fact, as required to be admissible, if it concerns matters that are beyond the understanding of the average layperson; such testimony must offer something more than what lawyers for the parties can argue in closing arguments. Fed. R. Evid. 702.

**[38]** **Evidence** 🔑 Customs and usages; industry practice

Testimony of expert on industry standards would be relevant, as required for admission in customer's action under California law claiming breach of contract that allegedly obligated service provider to provide services only at hourly rate, without any expectation as to completion of specific projects or deliverables, or any time frame or standard of care under which services would be provided, although foundation would have to be provided, including information about standards on which he relied. Fed. R. Evid. 702.

More cases on this issue

**[39]** **Evidence** 🔑 Customs and usages; industry practice

**Evidence** 🔑 As to Particular Subjects

Expert testimony as to standard practices in an industry is admissible when it is relevant and the expert has demonstrated a basis for the opinion. Fed. R. Evid. 702.

**[40]** **Federal Civil Procedure** 🔑 Failure to respond; sanctions

Presenting a summary of a proffered expert's testimony in the form of conclusory statements

devoid of factual or analytical support is simply not enough during discovery to allow the proponent of expert testimony to demonstrate that it satisfies the *Daubert* requirements. Fed. R. Civ. P. 26(a)(2)(B)(i); Fed. R. Evid. 702.

**[41]** **Evidence** 🔑 As to Particular Subjects

Opinions of proffered expert based on qualifications that were comprised solely of his experience in field, and his conclusory assertions without revealing methodology behind them, were not reliable, as required to be admissible in customer's action against service provider under California law alleging breach of contract for provision of information technology services that listed compensation on "time and materials" basis. Fed. R. Civ. P. 26(a)(2)(B)(i); Fed. R. Evid. 702.

More cases on this issue

**[42]** **Federal Civil Procedure** 🔑 Failure to respond; sanctions

District court had to defer ruling on *Daubert* motion and permit customer, as proponent of expert testimony, to lay foundation at trial in customer's action under California law alleging breach of contract, at which time service provider could renew its *Daubert* objection if necessary, and direct customer to submit affidavit describing how experience of witness led to his conclusions he expected to offer at trial, why that experience was sufficient basis for his opinions, and how he reliably applied that experience to facts of case, rather than exclude that testimony prior to trial; although discovery disclosure alone did not provide adequate foundation for admission of expert's testimony, service provider's concern that expert's report was too general to defend against likely would have been ameliorated by deposition and additional information could reveal that his opinions and methodology were reliable. Fed. R. Civ. P. 26(a)(1); Fed. R. Evid. 702.

More cases on this issue

**Attorneys and Law Firms**

**\*1299** Daniel L. Saxe, Saady & Saxe, PA, St. Petersburg, FL, for Plaintiff.

Jaclyn Behar, BeharBehar, Weston, FL, Aaron Behar, Michael Henri Rosen, BeharBehar, Sunrise, FL, for Defendant.

## ORDER

Charlene Edwards Honeywell, United States District Judge

This cause comes before the Court on Defendant Blue Banyan Solutions, Inc.'s Motion for Partial Summary Judgment (Doc. 39). In this diversity action, Plaintiff Go Mobile Flooring, LLC, alleges that Defendant breached a contract for the provision of information technology services. Defendant has filed a counterclaim alleging the same. Defendant now seeks partial summary judgment on Plaintiff's claim, arguing that the damages Plaintiff seeks are not legally compensable or are procedurally **\*1300** barred. Doc. 39. Plaintiff opposes the motion (Doc. 43), and Defendant has filed a reply (Doc. 44). Also before the Court is Defendant's Motion to Exclude Testimony of Plaintiff's Expert (Doc. 40), which Plaintiff opposes (Doc. 42).

Upon review and due consideration, the Court will deny without prejudice Defendant's Motion for Partial Summary Judgment and Defendant's Motion to Exclude Testimony, and direct Plaintiff to supplement its disclosures as to damages and its expert testimony within fourteen days.

## I. FACTS AND BACKGROUND [1]

On May 13, 2019, Plaintiff and Defendant signed a Statement of Work in which Defendant agreed to provide Plaintiff with information technology assistance. Doc. 39-1 at 7–8. The contract's "Scope" section listed two projects: 1) Priano Display Room Implementation project, in which Defendant "will be assisting Priano," Plaintiff's subsidiary, "get setup in Netsuite"; and 2) General Support project, which included a broad variety of tasks. *Id.* at 8. The contract provided that if either party wished to change the services covered, it must advise the other party in writing of the change sought so that the parties could issue a written change order. *Id.* The Netsuite setup project listed a "preliminary estimate"

of 100 hours. *Id.* Under "Assumptions and Expectations," it indicated, "[e]stimates are an approximation and based on known information. If a project or task may exceed estimates, Consultant will notify Client, who will decide how to proceed." *Id.* at 9.

The contract listed a start date of March 13, 2019, and an end date of September 30, 2019. *Id.* It also provided, "[i]f needed, the end date may be extended by written agreement from both parties." *Id.* With respect to compensation, it provided that "[s]ervices, including travel time ... will be performed on a time and materials basis at an hourly rate. [ ] Consultant will provide Client with an itemization of all hours worked along with a short description of services provided when Consultant submits invoices to Consultant [sic]." *Id.* Plaintiff would have the right to withhold payment if it disputed an invoice, without any stoppage of work, but it was required to provide Defendant with a written memorandum specifying the disputed portion of the invoice and the basis for the dispute. *Id.* The parties agreed that the contract would be governed by the laws of California. *Id.* at 11.

The project lasted well beyond the end date listed in the contract, and did not result in the successful implementation of NetSuite. Doc. 43 at 4–5. In December 2019, Plaintiff began expressing dissatisfaction with Defendant's services and stopped paying Defendant's invoices. Doc. 43-1 at 4; Doc. 39-1 at 2. Defendant asserts that it continued providing services until August 2020, by which time unpaid invoices and interest had accrued significantly. *Id.* at 3. Plaintiff alleges that it did not receive a written change order or advance notice that the contractual estimate of 100 hours would rise to approximately 900 hours. Doc. 43 at 3–4.

Plaintiff filed suit on December 29, 2020, alleging a breach of contract because it was overcharged, did not receive the promised services, and incurred damages in addressing the inadequacies of Defendant's **\*1301** work. Doc. 1. In turn, Defendant filed a counterclaim alleging that Plaintiff breached the contract by failing to pay the outstanding balance. Doc. 31. Defendant subsequently filed a motion for partial summary judgment on Plaintiff's breach of contract claim, as well as a motion to exclude Plaintiff's expert. Docs. 39, 40.

## II. MOTION FOR PARTIAL SUMMARY JUDGMENT

### A. Legal Standard

 [1]    [2]   Summary judgment is appropriate only when the court is satisfied that "there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law" after reviewing the "pleadings, the discovery and disclosure materials on file, and any affidavits[.]" *Fed. R. Civ. P. 56(c)(2)*. In determining whether a genuine issue of material fact exists, the Court must consider all the evidence in the light most favorable to the nonmoving party. *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1164 (11th Cir. 2003). Issues of fact are "genuine only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if it may affect the outcome of the suit under governing law. *Id.*

 [3]   The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. "Only when that burden has been met does the burden shift to the non-moving party." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). "[I]n order to survive summary judgment, the nonmoving party must set forth specific facts showing there is a genuine issue for trial." *Johnson v. New Destiny Christian Ctr. Church, Inc.*, 826 F. App'x 766, 770 (11th Cir. 2020) (citing *Anderson*, 477 U.S. at 249-50, 106 S.Ct. 2505).

### B. Discussion

 [4]    [5]   Defendant offers five grounds for summary judgment, all of which involve the exclusion or dismissal of Plaintiff's claims for damages. Under California law, the existence of damages as a result of the breach is an element of a cause of action for breach of contract. *Martinez v. Welk Grp., Inc.*, 907 F.Supp.2d 1123, 1131 (S.D. Cal. 2012). "To satisfy the damages element a plaintiff must show appreciable and actual damages, that are clearly ascertainable in both their nature and origin." *Id.* (citations omitted). Accordingly, if Plaintiff's damages are excluded or dismissed, Defendant will be entitled to summary judgment. *See id.* at 1132 (granting defendant's motion for summary judgment where plaintiff failed to create a genuine dispute of fact that it

suffered damages as a result of defendant's breach). Each of Defendant's arguments for exclusion will be addressed in turn.

As a threshold matter, Plaintiff points out that Defendant has failed to comply with the portion of the Court's Case Management and Scheduling Order that requires a movant to specify the material facts as to which it contends there is no genuine issue of material fact. [2] Doc. 43 at **\*1302** 1-2. Defendant argues that the factual history section of its motion satisfied the Order's requirement. Doc. 44 at 1 n.1. Plaintiff does not provide any legal authority for its contention that denial of the motion is warranted on this basis. The Court declines to deny Defendant's motion on this basis alone, but will consider whether it has satisfied its Rule 56 burden with respect to each of its arguments.

#### 1. Failure to Disclose Under Rule 26(a)(1)

 [6]   Defendant's first argument for summary judgment asserts that Plaintiff's damages must be excluded pursuant to Rule 37(c)(1), because Plaintiff failed to comply with the disclosure requirements of Rule 26(a). Doc. 39 at 8-11. Defendant argues that Plaintiff was required to disclose the underlying calculations for its damages, but instead has merely listed categories and amounts without revealing where they came from. *Id.* [3] Moreover, Defendant has been prejudiced because the discovery and dispositive motions deadlines have now passed, and reopening discovery would be costly. *Id.* at 10-11.

Plaintiff argues in response that Rule 26(a)(1) requires only notice, not specificity, and contends that its interrogatory responses and expert report provide an adequate explanation of the damages it is seeking. Doc. 43 at 9-13. Plaintiff also notes that the computations Defendant seeks "are not easy to do under the circumstances of this case." *Id.* at 13. It emphasizes that Defendant "neither complained nor filed a motion" to compel, and argues that Defendant's own Rule 26 disclosures are equally vague. *Id.* at 12 n.3.

In reply, Defendant asserts that Plaintiff has still failed to provide an adequate damages explanation despite multiple opportunities to do so, including in its response to Defendant's motion. Doc. 44 at 4-5. Further, **\*1303** Defendant points out that Plaintiff conceded in its opposition to Defendant's Motion to Exclude that its expert report did not explain damages, and that Plaintiff also failed to identify any financial documents that fulfilled its obligations. *Id.* at 5-6.

*(a) Adequacy of Disclosures Under Rule 26(a)(1)*

**[7]** Rule 26(a)(1) requires a party to provide an initial disclosure regarding its damages:

> (A) ... [A] party must, without awaiting a discovery request, provide to the other parties:
>
> ...
>
> (iii) a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material ... on which each computation is based, including materials bearing on the nature and extent of injuries suffered[.]

Fed. R. Civ. P. 26(a)(1). To comply with this requirement, "parties must perform some analysis, and cannot rely on general statements." *Boldstar Technical, LLC v. Home Depot USA, Inc.*, No. 07-80435-CIV, 2008 WL 11320010, *2 (S.D. Fla. Feb. 28, 2008), quoting *McBride v. Coats*, No. 8:06-cv-1490-SCB-EAJ, 2007 WL 3144028, *1 (M.D. Fla. Oct. 24, 2007); *see also Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir. 2006) (the rule, "by its very terms ... requires a computation, supported by documents") (quotation omitted).

In *Martel v. Hearst Communications, Inc.*, 468 F.Supp.3d 1212, 1218 (N.D. Cal. 2020), the court found that the plaintiff's list of damage types with corresponding amounts was inadequate under Rule 26(a)(1) because it lacked specific calculations. Similarly, the plaintiff's claim of "lost work opportunities in an estimated amount of $80,000 for the remainder of his life" was found to be insufficient in *Carter v. BPCL Mgmt., LLC*, No. 19-60887-CIV, 2021 WL 7502558, *3 (S.D. Fla. May 10, 2021). The plaintiff in *Frontline Med. Assocs., Inc. v. Coventry Health Care*, 263 F.R.D. 567, 569 (C.D. Cal. 2009), was also found to have violated Rule 26(a)(1) where it identified an amount of lost gross revenue but failed to explain the computation it underwent to reach that number. The *Frontline* court noted that if a plaintiff is seeking lost wages, "there should be some information related to hours worked and pay rate"; if it is seeking lost profits, "it should also state its computation of expenses and lost profits." *Id.* (quotation omitted). Moreover, "[f]uture expert analysis does not relieve Plaintiff of its obligation to provide information reasonably available to it as gross revenues, expenses and any other component of its lost

profits computation." *Id.* at 570; *see also Boldstar*, 2008 WL 11320010 at *1-2 (response to interrogatories was insufficient where plaintiff stated it was "unable to calculate a precise amount of damages because such calculation requires further financial discovery and analysis"); *GPI Int'l Ltd. v. IBC Creative LLC*, No. 1:07-CV-1540-ODE, 2009 WL 10671357 at *3-4 (N.D. Ga. Sept. 16, 2009) (statements that "obliquely reference damages related to unjust enrichment, without providing any calculation of damages whatsoever, plainly do not satisfy Rule 26(a)(1)(A)(iii)."), *aff'd*, 396 F. App'x 661 (11th Cir. 2010).

Here, the Court agrees with Defendant that Plaintiff's damages disclosures are inadequate under Rule 26(a)(1). The disclosures contain neither computations nor supporting documents. Just like the inadequate disclosures in *Martel* and *Carter*, Plaintiff's list of damages provides only a category and corresponding amount, without any explanation as to how Plaintiff **\*1304** calculated the amount. For example, the category of "Project Mismanagement" states that Plaintiff "lost man hours due to Blue Banyan's poor quality control," listing a figure of $10,140.00. Doc. 39-3 at 3. But Plaintiff fails to identify, *e.g.*, its estimate of the number of hours spent multiplied by the pay rate of the relevant employee(s), along with some corresponding documentation. The "Project Mismanagement" category is representative of all damages categories that appear on Plaintiff's list, none of which provide the requisite computations or documentation.

Further, unlike the cases on which Plaintiff relies (Doc. 43 at 10-11), Plaintiff's failure has continued beyond the initial stages of the case. In *Idahoan Foods, LLC v. Allied World Assurance Co. (U.S.), Inc.*, No. 4:18-cv-00273-DCN, 2020 WL 1948823, *6-7 (D. Idaho April 22, 2020), the court found that the plaintiff's initial disclosures were adequate for the early stage of the case—"this far ahead of the trial date"—but that it would "expect to see some changes in calculations and theories as the case progresses." Likewise, the court in *City & Cnty. Of San Francisco v. Tutor-Saliba Corp.* emphasized that "[o]nce document production has been substantially completed ... Plaintiffs will have to provide more detailed disclosure of their calculations[.]" 218 F.R.D. 219, 221-222 (N.D. Cal. 2003) ("disclosing a precise figure for damages without a method of calculation may be sufficient in cases where other evidence is developed *e.g.* in the context of a preliminary hearing, and it is appropriate to defer further specification to *e.g.* development of expert testimony"). Here, discovery closed and Plaintiff still failed to supplement its inadequate initial disclosures with the necessary information.

*See* Fed. R. Civ. P. 26(e) (directing a party to supplement its initial disclosures as information becomes available); *see also Twin Rivers Eng'g Corp. v. Fieldpiece Instruments, Inc.*, 6:12-cv-1794-PGB-TBS, 2014 WL 2778094, *6 (M.D. Fla. June 18, 2014)* (no Rule 26(a) violation where defendant provided an educated estimate of its damages in initial disclosure, then, prior to close of discovery, supplemented its response with more detailed information and stated that plaintiff could inspect the supporting documents). The Court also agrees with Defendant that Plaintiff's expert report does not provide the necessary calculations, and that Plaintiff has also failed to identify any documents it produced that fill the gap in its disclosures. Plaintiff has not complied with Rule 26(a)(1) or (e).

### (b) Sanctions Under Rule 37(c)(1)

Under Rule 37(c)(1),

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

> > (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;

> > (B) may inform the jury of the party's failure; and

> > (C) may impose other appropriate sanctions[.]

Fed. R. Civ. P. 37(c)(1). The advisory committee notes to this rule explain that it "provides a self-executing sanction for failure to make a disclosure ... without need for a motion [for sanctions]." *Id.*, advisory committee's note to 1993 amendment.

Although some circuits, including the Ninth Circuit, have found that the exclusion of evidence is mandatory under this rule, *see, e.g.*, **\*1305** *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011), the Eleventh Circuit is not among them. In *Circuitronix, LLC v. Kinwong Electronic (Hong Kong) Co., Ltd.*, 993 F.3d 1299, 1308 (11th Cir. 2021), the Eleventh Circuit observed the existence of a split in other circuits but declined to decide whether district courts have the discretion to impose lesser

sanctions even for violations that are unjustified and not harmless. However, even circuits that consider the Rule 37(c)(1) sanction mandatory have held that in cases where its imposition would amount to dismissal of a claim, imposing it is only warranted if the noncompliance involved willfulness, fault, or bad faith. *R&R Sails, Inc. v. Ins. Co. of Penn.*, 673 F.3d 1240, 1247 (9th Cir. 2012); *see also BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1048-49 (11th Cir. 1994) ("Our caselaw is clear that only in a case where the court imposes the most severe sanction—default or dismissal—is a finding of willfulness or bad faith failure to comply necessary.").

By its terms, Rule 37(c)(1) applies only if the failure to comply with Rule 26(a) was not "substantially justified or harmless." Fed. R. Civ. P. 37(c)(1). The Eleventh Circuit has not defined harmlessness. *See Circuitronix*, 993 F.3d at 1307-08 ("Although we have not settled the meaning of harmlessness under Rule 37 and, in particular, its relationship to prejudice, we need not do so here."). Some district courts have applied a multi-factor test to determine whether non-disclosure is harmless: "(1) the importance of the excluded testimony; (2) the explanation of the party for its failure to comply with the required disclosure; (3) the potential prejudice that would arise from allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Mortg. Payment Prot., Inc. v. Cynosure Fin., Inc.*, No. 6:08-cv-1212-ACC-GJK, 2010 WL 11507658, *2 (M.D. Fla. Nov. 5, 2010)* (citation omitted); *see also Martel*, 468 F.Supp.3d at 1219 (listing factors as "(1) the surprise to the party against whom the evidence should be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence.") (citations omitted).

One factor courts have considered when finding a disclosure violation harmless is whether the other party received constructive notice of the undisclosed information through other means. In *Carter*, for example, the court found that a document explaining the party's damages calculations was adequate to cure any harm even though it did not strictly comply with Rule 26(a) or (e). 2021 WL 7502558 at *4. Courts have also considered the stage of the case in which the failure occurred and whether there was adequate time to cure it. For instance, the court in *Zalimeni v. Cooper Marine & Timberlands Corp.* combined these two factors, finding that the plaintiff's complaint provided enough information to place the defendants on notice "regarding *at least some* of the

damages' range"; because more than three months remained before the scheduled trial date, it declined to grant summary judgment to the defendants and instead ordered the plaintiff to provide more specific information. No. CV 1:19-00245-KD-C, 2020 WL 6533393, *16-17 (S.D. Ala. Nov. 5, 2020) (emphasis in original). In *Martel*, the court observed that the Rule 26(a) failure did not cause undue delay because the COVID-19 pandemic had delayed trials anyway. 468 F.Supp.3d at 1219-20. The court did, however, require the noncompliant party to pay the costs of reopening discovery. *Id.* at 1220. On the other hand, the Eleventh Circuit held that the district court did not abuse its discretion when it found that "reopening discovery at this stage in the **\*1306** proceedings would constitute significant harm." *City of Rome v. Hotels.com, L.P.*, 549 F. App'x 896, 905 (11th Cir. 2013).

[8] A disclosure violation that occurs close in time to the trial date is more likely to prejudice the other party in a concrete manner. For example, the district court did not abuse its discretion in excluding undisclosed evidence in *Circuitronix* where the plaintiff's failure to disclose its complex damages calculations "hampered [the defendant's] damages expert from preparing his analysis before trial." 993 F.3d at 1308; *see also Teletracking Techs., Inc. v. Orlando Health, Inc.*, 6:20-cv-1716-RBD-EJK, 2022 WL 1619539, *5 (M.D. Fla. April 29, 2022) (failure to disclose meant that defendant "was unable to test the validity of the expenses or the affidavit supporting them in discovery, which has already closed").

[9] [10] The other party's dilatory reaction to an inadequate disclosure can also impact the harm analysis. In *Bowers v. Am. Heart Ass'n, Inc.*, No. 1:06-cv-2989-CC, 2008 WL 11407360, *3 (N.D. Ga. Dec. 2, 2008), the court found that any prejudice to the defendants from the plaintiff's insufficient disclosures "is at least partially the result of Defendants' own failure to bring the issue ... before the Court at an earlier time. [ ] Rather than promptly bringing the insufficiencies of Plaintiff's responses to the Court in a motion to compel, Defendants simply waited to cry prejudice after discovery closed and the case was set for trial." *Id.* The court also noted that a more detailed disclosure of non-economic damages based on pain and suffering "likely would have done little to guide Defendants' discovery efforts," which further weakened a claim of prejudice. *Id.* Similarly, the court in *XTEC, Inc. v. Cardsmart Technologies, Inc.* declined to exclude evidence of damages despite inadequate disclosures, stating, "[t]hough it is Plaintiff's obligation to produce the disclosures in a timely manner, failure to do so permitted Defendant to move to compel the production (upon proper

conferral), at which point this Court could have cured the problem and imposed a reasonable sanction." No. 11-22866-CIV-Moreno/Hunt, 2014 WL 10250973, *4 (S.D. Fla. Dec. 2, 2014); *see also Torres v. First Transit, Inc.*, 17-cv-81162, 2018 WL 4469026, *4 (S.D. Fla. Sept. 18, 2018) (same). Courts are more likely to find prejudice or harm where the opposing party has made repeated requests or brought the issue to the court's attention. *See M.D. Moody & Sons, Inc. v. McLaren*, 3:11-CV-1242-TJC-JBT, 2012 WL 13136841, *4 (M.D. Fla. Dec. 28, 2012) (failure to comply with two courts orders compelling disclosure warranted "harsh sanction" of dismissal); *Managed Care Sols., Inc. v. Essent Healthcare, Inc.*, No. 09-60351, 2010 WL 11506057, *12-13 (S.D. Fla. Aug. 31, 2010) (party's failure to respond to "repeated requests" and comply with a court order supported exclusion of lost profits damages); *see also In re Seven Stars on the Hudson Corp.*, 637 B.R. 180, 211 (Bankr. S.D. Fla. 2022) ("Seven Stars failed at every instance to properly and timely disclose its damages calculations," representing that it would rely on an expert to prove damages but then failing to do so and instead coming up with an entirely new theory of damages after the close of discovery), *aff'd* No. 22-civ-60299-RAR, 2022 WL 10046439 (S.D. Fla. Oct. 17, 2022).

[11] Here, several factors support imposing a Rule 37(c)(1) sanction of some kind. Plaintiff does not offer any justification or explanation for its failure to comply with Rule 26(a), insisting that it disclosed all that is necessary. Discovery closed and the dispositive motions deadline passed without the required disclosures, which Plaintiff still did not make even after Defendant **\*1307** raised the issue in the instant motion. Reopening discovery and moving these deadlines would certainly cause delay.

[12] On the other hand, the prejudice to Defendant is relatively minimal. Defendant had some notice of the bases for Plaintiff's damages requests even without the underlying calculations and documents, and the damages calculations are only one aspect of Plaintiff's claim. *See Carter*, 2021 WL 7502558 at *4. Defendant does not identify any concrete prejudice it has suffered, such as an impact on a retained damages expert's ability to conduct an analysis. *Cf. Circuitronix*, 993 F.3d at 1308. Further, this action is not currently scheduled for trial, pending resolution of this motion. *See* Docket Entry 58 (granting Defendant's motion to continue trial and noting that COVID-19 delays and the Court's busy trial calendar would not allow the case to be reached in the originally-scheduled term); *Martel*, 468 F.Supp.3d at 1219-20.

Moreover, the Court takes a dim view of Defendant's inaction on this issue. Although Defendant was not *required* to file a motion to compel, its failure to bring the issue to the Court's attention until after discovery closed has significantly contributed to any resulting delay.[4] *See Bowers*, 2008 WL 11407360 at *3; *XTEC*, 2014 WL 10250973 at *4; *cf. M.D. Moody*, 2012 WL 13136841 at *4. Defendant also has not provided evidence that it communicated with Plaintiff to request more fulsome damages disclosures after receiving the insufficient responses to its interrogatories. *Cf. Managed Care*, 2010 WL 11506057 at *12-13.

 [13] The Court also finds that exclusion would be an overly harsh sanction in this case, because it would result in the dismissal of Plaintiff's entire claim. Defendant does not argue that Plaintiff's violation occurred willfully or in bad faith, such that it merits dismissal. *See R&R Sails*, 673 F.3d at 1247; *see also BankAtlantic*, 12 F.3d at 1048-49. Nor does the limited evidentiary record before the Court contain evidence of willfulness or bad faith. *Cf. Moody*, 2012 WL 13136841 *4; *In re Seven Stars on the Hudson Corp.*, 637 B.R. 180 at 211. In all, the Court concludes, in its discretion, that the Rule 26(a)(1) violation does not warrant exclusion of Plaintiff's damages.

Instead, Plaintiff is ordered to cure its discovery violation immediately by amending its disclosures to provide Defendant with a detailed computation of each category of damages it claims, and making available for inspection and copying the documents or other evidentiary material on which each computation is based. *See* Fed. R. Civ. P. 26(a)(1)(a) (III). Defendant may then file a motion to reopen discovery to the extent directly necessitated by Plaintiff's amended disclosures. Plaintiff must pay all expenses and fees incurred by Defendant in following up on the amended disclosures, but only those fees and costs that are directly attributable to the amended disclosures.

Defendant's motion for summary judgment on this ground is therefore denied, without prejudice, and with leave to renew should Plaintiff fail to comply with this Court's Order.

### *1308 *2. Lost Profits*

 [14] Defendant next makes two arguments with respect to Plaintiff's requests for damages resulting from lost profits. First, it argues that lost profits are special damages that must be pleaded with particularity; because Plaintiff did not plead

them in the Second Amended Complaint, it is precluded from seeking them. Doc. 39 at 12. Moreover, Plaintiff's request refers to "lost revenue," rather than "lost profits," but only lost profits—calculated after expenses rather than before—are recoverable. *Id.* at 12-13. Plaintiff does not respond to these arguments. *See* Doc. 43 at 13-15; Doc. 44 at 2-3. Each argument will be addressed in turn.

 [15]  [16]  [17]  [18] Contractual damages are either "general" or "special." *Greenwich S.F., LLC v. Wong*, 190 Cal. App. 4th 739, 753-54, 118 Cal.Rptr.3d 531 (2010). Special damages are "losses that do not arise directly and inevitably" from the breach, but "are secondary or derivative losses arising from circumstances that are particular to the contract or the parties." *Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified School Dist.*, 34 Cal. 4th 960, 975, 22 Cal.Rptr.3d 340, 102 P.3d 257 (2004). Lost profits may fall into either category, but are more commonly found to be special damages. *Id.* Plaintiff apparently concedes that the lost profits it seeks are special damages, rather than general damages. *See* Doc. 43 at 14-15 (describing its damages as "consequential damages"); *Greenwich*, 190 Cal. App. 4th at 754, 118 Cal.Rptr.3d 531 (special damages are sometimes called consequential damages). Where lost profits are special damages, rather than general, California law provides that they must be pleaded with particularity. *Mitchell v. Clark*, 71 Cal. 163, 168, 11 P. 882 (1886). Rule 9(g) of the Federal Rules of Civil Procedure also provides that a plaintiff must plead a claim for special damages in the complaint. Fed. R. Civ. P. 9(g) ("Special Damages. If an item of special damage is claimed, it must be specifically stated.").

Here, the Second Amended Complaint does not request special damages or refer to any damages in the form of lost profits or revenue, nor can its references to other damages be interpreted as such. Doc. 14 ¶¶ 10-11. Yet, in its responses to Defendant's interrogatories, Plaintiff identifies two categories of damages that are based on "lost revenue." Doc. 39-3 at 3. The Court further observes that other categories of identified damages may also fall under the label of special damages, such as "Pay Now," in which Plaintiff apparently seeks compensation for the salary of the employee it had to dedicate to collections. *Id.* Defendant argues Plaintiff is precluded from recovering any special damages because of its failure to plead them in the Second Amended Complaint. Doc. 39 at 12.

 [19] Although Defendant relies on California caselaw in its argument, the Court finds that federal law governs the

procedural issue of a Plaintiff's pleading requirements. *See Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F.Supp.2d 1035, 1047 (C.D. Cal. 1998) ("In a diversity case, the requirement that special damages be pleaded specifically is a matter of federal law."); *see also Beacon Fin. Mortg. Bankers Corp. v. Gateway Bank*, No. 06-22163-CIV, 2007 WL 9702198, *1 (S.D. Fla. Oct. 19, 2007) (while finding that state law governed whether the requested damages should be considered "special damages," citing to Federal Rule 9(g) as to whether it must be specifically pleaded); *Mancil's Tractor Serv., Inc. v. T&iK Constr., LLC*, No. 15-80520-CIV, 2016 WL 7486707, *2 (S.D. Fla. Mar. 3, 2016) (rejecting party's reliance on Florida case law for lost profits pleading requirements, because "to the extent that a Florida requirement **\*1309** rule conflicts with the federal rules the Erie doctrine requires this Court to apply the federal rule in this diversity action"). Accordingly, the Court will consider this question under Rule 9(g).

**[20]** **[21]** The purpose of Rule 9(g) is to ensure that a defendant is not unfairly surprised by claims for certain types of damages not explicitly pled. *Mancil's*, 2016 WL 7486707 at *2. As the Fifth Circuit explained in *Great Am. Indem. Co. v. Brown*, 307 F.2d 306, 308 (5th Cir. 1962),[5] "the rule is designed to inform defending parties as to the nature of the damages claimed." In *Brown*, the court found that as long as there was "full notice of the claim for special damages," plaintiff had demonstrated sufficient compliance. *Id.* Subsequent courts have observed that the 1993 enactment of Rule 26(a) requiring the parties to make initial disclosures "has nullified the purpose somewhat of Rule 9(g)." *Mancil's*, 2016 WL 7486707 at * 2; *Leavitt v. Cole*, 291 F.Supp.2d 1338, 1344 n.6 (M.D. Fla. 2003). As a result, courts have "trended toward a more lenient and practical reading of Rule 9(g)" that considers whether the defendant has received actual notice from any source. *Lord v. Univ. of Miami*, No. 13-22500-CIV, 2022 WL 18023293, *6-7 (S.D. Fla. July 26, 2022), citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure §§ 1311, 1312 (4th ed. 2022). This approach is consistent with "a strong federal policy favoring resolution of a case on the merits." *Mancil's*, 2016 WL 7486707 at *2.

**[22]** At an early stage of the case, a motion to dismiss a special damages claim for failure to plead them with particularity may be due to be granted with leave to amend. *See, e.g., Challenge Printing Co., Inc. v. Elecs. for Imaging Inc.*, 500 F.Supp.3d 952, 965 (N.D. Cal. 2020) (due to inadequate pleading of special damages, "the Court will preclude Challenge Printing from pursuing special damages

at trial unless the complaint is amended to comply with Rule 9(g)"); *Modden v. Ticketfly*, No. 18-CV-06450-RS, 2019 WL 3413372, *5 (N.D. Cal. July 29, 2019) (dismissing claim for breach of contract with leave to amend where special damages were not pled with particularity); *Beacon Fin. Mortg. Bankers Corp. v. Gateway Bank*, No. 06-22163-CIV, 2007 WL 9702198, *2 (S.D. Fla. Oct. 19, 2007) ("The undersigned is not persuaded that this case is such an unusual case that Beacon Financial should not be given an opportunity to amend its complaint to specifically allege special damages.").

**[23]** As the case progresses, however, courts are reluctant to preclude damages for failure to comply with Rule 9(g) where the defendant has received actual notice of the plaintiff's request through another means. In *Wilmington Tr., N.A. v. Est. of Gonzalez*, No. 15-CV-23370-UU, 2016 WL 11656681, *10 (S.D. Fla. Nov. 1, 2016), the court found that the defendants were placed on notice of the special damages by the plaintiff's initial disclosures, and therefore could not claim surprise or prejudice from the plaintiff's failure to plead them in the complaint. *See also Therapeutics MD, Inc. v. Evofem Biosciences, Inc.*, No. 20-CV-82296, 2022 WL 2341965, *2 (S.D. Fla. June 1, 2022) (same); *Mancil's*, 2016 WL 7486707 at *2-3 (same); *Williams v. Wells Fargo Bank, N.A.*, No. 5:13-CV-03387-EJD, 2017 WL 1374693, *12 (N.D. Cal. Apr. 14, 2017) ("Even if there was a pleading defect with respect to special damages, Wells Fargo cannot reasonably argue it **\*1310** did not receive adequate notice of what damages Plaintiff was claiming through other information produced in this proceeding.").

Here, too, the Court finds that Defendant has received actual notice of Plaintiff's intent to seek special damages through Plaintiff's responses to their interrogatories. *See* Doc. 39-3 at 3. The deficiencies with Plaintiff's responses that the Court has already addressed are a consideration for Rule 26(a), not Rule 9(g). The notice Defendant has received satisfies the limited purpose of Rule 9(g). As a result, the Court will not preclude Plaintiff from requesting special damages because of its failure to plead them.

**[24]** **[25]** With respect to Defendant's second argument, Defendant is correct that Plaintiff cannot recover lost revenue, only lost profits. "Damages awards in injury to business cases are based on net profits," which are "the gains made from sales after deducting the value of the labor, materials, rents, and all expenses, together with the interest of the capital employed." *Parlour Enterprises, Inc. v. Kirin Grp.,*

*Inc.*, 152 Cal.App.4th 281, 287, 61 Cal.Rptr.3d 243 (2007) (quotations omitted). Accordingly, to the extent Plaintiff seeks any damages based on lost revenue, rather than lost net profits, it is precluded from doing so. Only two of the six categories of damages refer to lost revenue, however, and an adequate explanation of the categories' underlying computations may demonstrate that Plaintiff seeks only lost net profits, despite the terminology it used in its bare-bones summary. Because the Court is ordering Plaintiff to provide the underlying computations of the damages it seeks, see Section II(B)(1), *supra*, it will deny Defendant's motion on this ground, without prejudice, with leave to renew should Plaintiff continue to seek damages based on lost revenue rather than profits.

### 3. Clearly Ascertainable

In this section, Defendant argues it is entitled to summary judgment on Plaintiff's damages because none of the listed categories are "clearly ascertainable," as required by California law. Doc. 39 at 13-16. Rather, because Plaintiff has not explained the basis for the stated figures, they appear to result from mere speculation. *Id.* Plaintiff responds that uncertainty as to the amount of damages is not fatal to its claim, particularly where the uncertainty is caused by Defendant's breach. Doc. 43 at 13-14.

 [26]  California law provides that damages resulting from a breach of contract "must be certain" and cannot be recovered unless they are "clearly ascertainable in both their nature and origin." Cal. Civ. Code § 3301. Plaintiff is correct that certainty as to the amount of damage is not required, and that a party "will not be denied recovery simply because precise proof of the amount of damage is not available." *Israel v. Campbell*, 163 Cal.App.2d 806, 816, 330 P.2d 83 (1958). However, the *Israel* court continued, "[t]he law only requires that *some reasonable basis of computation be used*, and will allow damages so computed even if the result reached is only an approximation." *Id.* (emphasis added). As discussed in Sections II(B)(1) and (2), *supra*, Plaintiff has failed to provide *any* basis of computation for its categories of damages. Similarly, a quote that Plaintiff erroneously attributes to *First Nat'l Mortg. Co. v. Fed. Realty Inv. Trust*, 631 F.3d 1058, 1069 (9th Cir. 2011), Doc. 43 at 14,[6] states that an estimate **\*1311** of damage is only appropriate if it is "a reasonable one"— but Plaintiff's damage estimates lack any basis from which to determine if they are reasonable. Plaintiff's reliance on *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.*, 78 Cal.App.4th 847, 889-90, 93 Cal.Rptr.2d 364 (2000), is

equally unavailing. Although the court noted that "recovery will not be denied because the amount cannot be shown with mathematical precision," the "extent and occurrence" of damages must be able to be "ascertained with reasonable certainty[.]" *Id.* For example, the "extent" of lost profit damages "may be measured by the past volume of business and other provable data relevant to the probable future sales." *Id.* (quotation omitted). Again, Plaintiff's estimates do not allow ascertainment of the extent of their damages because they fail to provide any underlying data and calculations.

Nonetheless, Defendant does not provide any legal authority to support its argument that it is entitled to summary judgment on the question of damages because Plaintiff has not provided enough information from which to conclude whether its claimed damages are "clearly ascertainable." As described *supra*, the Court will give Plaintiff another opportunity to provide the computations underlying its damage estimates. If Defendant believes the estimates still do not meet the standards described by California courts, and can provide legal authority demonstrating that it is entitled to summary judgment on these grounds, it may renew its motion for summary judgment.

### 4. Proximate Cause

 [27]  Next, Defendant contends that the damages Plaintiff alleges were not likely to result from a breach of their contract, which was merely a "time and materials" contract that did not promise a particular result. Doc. 39 at 17, citing Cal. Civ. Code § 3300 (damages for breach of contract must be proximately caused by or likely to result from the breach). Plaintiff disagrees, arguing that the contract itself and emails between the parties demonstrate that Defendant was hired to deliver an array of services that were not delivered. Doc. 43 at 16.

The Court finds that material questions of fact exist regarding the scope and purpose of the contract. The contract describes its purpose as "the provision of NetSuite and SolarSuccess Implementation Services," and lists several specific programs Blue Banyan would assist Priano in setting up. Doc. 39-1 at 8. Ricardo Cipriano's affidavit states that the contract's purpose and parties' intent was that Blue Banyan would complete the setup process. Doc. 43-1 ¶¶ 3-5. The emails between the parties, viewed in the light most favorable to the Plaintiff, support the same inference. *Id.* at p. 15-25. Defendant provides no legal authority for its contention that a contract that lists compensation on a "time and materials" basis, *see* Doc. 39-1 at 9, does not, as a matter of law, entitle

a party to damages for the failure to complete particular services. Therefore, Defendant has not met its burden of showing that it is entitled to summary judgment on the ground that the alleged damages were not proximately caused by a breach.

### 5. Equitable Estoppel

 **[28]**   Lastly, Defendant argues that it is entitled to summary judgment because Plaintiff breached the contract by failing to pay for Defendant's services, which meant that Defendant had no obligation to perform. Doc. 39 at 18. Defendant also asserts, without legal authority, that Plaintiff is equitably estopped from claiming damages for work it failed to pay for. *Id.* Defendant's entire argument on these  **\*1312**  points comprises four short sentences. *Id.* It fails to cite to any evidence in the record establishing that there are no genuine issues of material fact as to whether Plaintiff breached the contract by failing to pay the invoices. *See Celotex*, 477 U.S. at 323-24, 106 S.Ct. 2548. On the contrary, this appears to be a contested factual question that also the subject of Defendant's own counterclaim, for which it has not moved for summary judgment. Defendant does not even come close to meeting its burden of establishing that summary judgment is warranted in its favor based on Plaintiff's alleged breach.

Defendant's motion for partial summary judgment is therefore due to be denied. However, Sections 1, 2, and 3 of the motion are denied, without prejudice, pending Plaintiff's supplemental disclosures as to its damages calculations.

## III. MOTION TO EXCLUDE EXPERT TESTIMONY

### A. <u>Legal Standard</u>

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702 is a codification of the United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). In *Daubert*, the Supreme Court described the gatekeeping function of the district court to "ensure that any and all scientific testimony or evidence is not only relevant, but reliable." *Id.* at 589, 113 S.Ct. 2786; *see also United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (*en banc*). The Court extended its reasoning in *Daubert* to non-scientist experts in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

 **[29]**    **[30]**   In performing its gatekeeping function, a district court must consider whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address, (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*, and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Frazier*, 387 F.3d at 1260 (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)). Thus, the three discrete inquiries to determine the admissibility of expert testimony are qualifications, reliability, and relevance. *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003). Although there is some overlap among these inquiries, they are distinct concepts that the Court and litigants must not conflate. *Id.*

 **[31]**    **[32]**   "The burden of laying the proper foundation for the admission of expert testimony is on the party offering the expert, and the admissibility must be shown by a preponderance of the evidence." **\*1313** *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1261 (11th Cir. 2004) (citation

omitted). The admission of expert testimony is a matter within the discretion of the district court, which is afforded considerable leeway in making its determination. *Frazier*, 387 F.3d at 1258.

 **[33]** **[34]** The gatekeeper role, however, is not intended to supplant the adversary system or the role of the jury: "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596, 113 S.Ct. 2786. "The judge's role is to keep unreliable and irrelevant information from the jury because of its inability to assist in factual determinations, its potential to create confusion, and its lack of probative value." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1311–12 (11th Cir. 1999).

### B. Discussion

 **[35]** Defendant challenges the admissibility of Plaintiff's expert based on the *Daubert* inquiries of reliability and helpfulness.[7] Doc. 40. The opinions of the expert, Bhogavalli Mallikarjuna Gupta, are summarized in Plaintiff's expert disclosures. Doc. 40-1. Defendant first argues that Gupta's opinions are not based on a reliable methodology and are conclusory statements that amount to mere *ipse dixit*. Doc. 40 at 4-5, 6, 8. It contends that Gupta's bare references to "best practices" and "industry standards" are insufficiently supported and lack a demonstrable, verifiable standard about which it can cross-examine him. *Id.* at 10-13. Further, Defendant argues that Gupta's opinions will not assist the trier of fact because he does not explain technical terms of the contract or calculate damages; and his statements about industry standards are irrelevant to a breach of a "time and materials" contract. *Id.* at 5-11.

In response, Plaintiff points out that the phrase "best practices" never appears in Gupta's report, and argues that expert opinions based on industry standards may result in breach of contract cases. Doc. 42 at 7-9. Defendant's decision not to depose Gupta deprived it of the opportunity to learn about his methodology, but Gupta will be subject to cross examination on this topic at trial. *Id.* at 8-10, 13-15. Plaintiff contends that Gupta's testimony will help the jury understand the contract's scope of work, which involves terminology and tasks that are beyond the understanding of the average layperson, as well as the specific problems with Defendant's work that constituted breaches of the contract. *Id.* at 11-18.

 **[36]** Plaintiff also argues that Defendant's motion is due to be denied on procedural grounds for failure to comply with Local Rule 3.01(g). *Id.* at 2. Local Rule 3.01(g) requires a moving party to confer, or attempt to confer, with their adversary in good faith before filing any motion, and to certify that they have done so. Local Rule 3.01(g) (M.D. Fla., 2021). A party's failure to comply with this rule is a basis to deny the motion without prejudice. *See, e.g.*, *Shallenburg v. PNC Bank, N.A.*, No. 8:16-cv-810-VMC-JSS, 2016 WL 8999084 (M.D. Fla. 2016) (Covington, J.). Plaintiff is correct that Defendant's motion does not include a Rule 3.01(g) certification. Despite this omission, the Court will review the **\*1314** merits of the motion. However, the parties are reminded of the need to comply with this and all provisions of the Local Rules. Future motions that do not comply with the rules will be subject to denial.

 **[37]** The Court will first consider whether Plaintiff has established that Gupta's testimony is relevant and will assist the trier of fact. "By this requirement, expert testimony is admissible if it concerns matters that are beyond the understanding of the average layperson." *U.S. v. Frazier*, 387 F.3d 1244, 1262 (11th Cir. 2004) (citation omitted). Such testimony must offer something "more than what lawyers for the parties can argue in closing arguments." *Id.* at 1262-63 (citation omitted); *see Schultz v. Gov't Employees' Ins. Co.*, No. 1:15CV172-MW/GRJ, 2016 WL 8861701, *1 (N.D. Fla. Aug. 12, 2016)* ("When the facade of improper opinion is stripped away, much of Mr. Fey's expert report is merely a summary of the facts in a light favorable to Plaintiff and argument about the significance of those facts.").

In arguing that Gupta's testimony is not relevant, Defendant relies on the theory of the case it announced in its motion for partial summary judgment: that the parties' contract obligated Defendant only to provide services at an hourly rate, without any expectation as to the completion of specific projects or deliverables, or any time frame or standard of care under which the services would be provided. Doc. 40 at 7, 9, 10-11; *see also* Section II(B)(4), *supra*. As a result, in Defendant's view, the only relevant information an expert could offer would be to define technical contract terms or calculate damages. *See* Doc. 40 at 5. The Court disagrees. After all, Defendant's theory is just that—one party's theory of the case that is vehemently disputed by the other. Notably, Defendant did not seek summary judgment as to the element of breach, perhaps recognizing that disputed questions exist regarding whether it provided the services described in the contract. The Court is persuaded that Gupta's testimony is relevant to

these disputed questions. For example, Gupta may explain the various tasks and projects described in the contract's "Scope" section, which involve technical terms that are outside the knowledge of the average layperson. His opinions also relate to Defendant's use, or misuse, of the hours for which it billed Plaintiff, which is highly relevant to the question of breach. Further, his explanations of the consequences of the allegedly defective services Defendant rendered are relevant to the factual question of damages, even though he does not calculate the monetary amounts. The Court concludes that Gupta's testimony will assist the trier of fact and therefore satisfies the relevance prong.

[38] Defendant also challenges Gupta's purported reliance on best practices and industry standards. Some of Defendant's argument on this point rests on the misconception that Gupta's opinions are based on "best practices," Doc. 40 at 4-6, a term that does not appear in Gupta's report and therefore will not be addressed. But Gupta does opine that Defendant did not comply with unidentified "industry standards" in his discussion of Code Review on one page of his report. *See* Doc. 40-1 at 5. Defendant contends that industry standards are irrelevant to a breach of contract case unless the contract expressly incorporated them. Doc. 40 at 6-7, 10.

[39] "Expert testimony as to standard practices in an industry is admissible where it is relevant and the expert has demonstrated a basis for the opinion." *Regions Bank v. Kaplan*, 8:12-cv-1837-EAK-MAP, 2017 WL 1148309, *2 (M.D. Fla. March 24, 2017) (Kovachevich, J.). In insurance cases, for example, courts in this District have found that expert testimony regarding insurance **\*1315** industry standards and practices is relevant and helpful to the trier of fact. *See*, *e.g.*, *Oakwood Ins. Co. v. N. Am. Risk Servs., Inc.*, 6:18-cv-437-GAP-LHP, 2020 WL 10456817, *3-4 (M.D. Fla. Sept. 22, 2020); *Houston Specialty Ins. Co. v. Vaughn*, 8:15-cv-2165-EAK-AAS, 2017 WL 11415011, *3 (M.D. Fla. April 13, 2017) (Kovachevich, J.); *Chaney v. State Farm Mut. Auto Ins. Co.*, 6:14-cv-1043-CEM-DCI, 2015 WL 12838839, *5 (M.D. Fla. Dec. 9, 2015). District courts in the Ninth Circuit have found this type of testimony relevant in other types of breach of contract cases as well. *See Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) (in breach of contract case, the district court allowed expert to "discuss industry conditions, standards, and practices," as well as "factual corporate norms"); *Takeya USA Corp. v. PowerPlay Mktg. Grp., LLC*, No. 8:21-cv-00835-JVSDFMX, 2022 WL 17357781, *5 (C.D. Cal. Sept. 1, 2022) (expert testimony as to whether defendant's performance

fellow below industry standards of the sales representative industry was relevant in breach of contract case); *Bakersfield Pipe & Supply, Inc. v. Cornerstone Valve, LLC*, No. 1:14-cv-001445-JLT, 2016 WL 3538250, *7-8 (E.D. Cal. June 28, 2016) (permitting some expert testimony about industry customs, while excluding similar testimony that failed to identify the industry standards it relied on). Although there are some breach of contract cases to which industry standards are *not* relevant, *see.*, *e.g.*, *St. Louis Condo. Ass'n Inc. v. Rockhill Ins. Co.*, No. 18-21365-CIV, 2019 WL 2012966, *9 (S.D. Fla. March 11, 2019) (industry standards about claims handling practices were irrelevant to question of whether plaintiff's hurricane damages were covered under the insurance policy), Defendant has not pointed to any authority from California or the Ninth or Eleventh Circuits that industry standards are, as a matter of law, irrelevant to breach of contract cases. [8] In this case, the Court does not find that Gupta's reliance on industry standards is irrelevant. As described below, however, Plaintiff will be required to provide foundation—including information about the standards on which he relies—in order to establish that his opinions are reliable. *See Bakersfield*, 2016 WL 3538250 at *7; *Regions Bank*, 2017 WL 1148309 at *2.

Next, the Court turns to the *Daubert* prong of reliability. For expert testimony to be admissible, it "must be the product of reliable principles and methods that are reliably applied to the facts of the case." Fed. R. Evid. 702 advisory committee's notes to 2000 amendments. Thus, the proponent of expert testimony is required to disclose not only the opinions the expert will express, but also "the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). Rule 26(a)(2) does not require detailed descriptions; "if a party wants a more detailed disclosure of how an expert arrived at her opinions, its recourse is to press for a more detailed report and/or to take the expert's deposition in the usual course of discovery." **\*1316** *Houston*, 2017 WL 11415011 at *3 (quotation omitted).

[40] For *Daubert* purposes, however, the Eleventh Circuit has explained that the Court's "gatekeeping function requires more than simply taking the expert's word for it. [ ] If admissibility could be established merely by the *ipse dixit* of an admittedly qualified expert, the reliability prong would be, for all practical purposes, subsumed by the qualification prong." *U.S. v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004). Therefore, "[p]resenting a summary of a proffered expert's testimony in the form of conclusory statements devoid of factual or analytical support is simply not enough" to allow

the proponent of expert testimony to demonstrate that it satisfies the *Daubert* requirements. *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1113 (11th Cir. 2005).

For the same reason, an expert who "is relying solely or primarily on experience ... must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 advisory committee's note to 2000 amendment. In *Chaney*, for example, the court found that an expert's report and deposition testimony:

> fail[ed] to make an adequate connection between his experience in the industry and his conclusions. Many of [his] opinions are presented as little more than his opinion of the record evidence. He has not presented a basis in his experience or education other than his conclusory assertions regarding industry standards and his so-called best practices. This is not sufficient to pass the reliability test. [He] must explain how his experience results in his conclusions regarding widely accepted industry standards and best practices and how those are reliably applied to the facts in this case.

2015 WL 12838839 at *4.

**[41]** Here, Gupta's qualifications are comprised solely of his experience in the field. Doc. 40-1 at 12. Presumably, the opinions he offers and his reference to "industry standards" are based on this experience—but his report does not draw that, or any, connection between them. As in *Chaney*, his report consists only of opinions and conclusory assertions that are not enough to demonstrate their reliability. Nor do his conclusions reveal the methodology behind them. Without such foundation, "much of [Gupta's] report is merely a summary of the facts in a light favorable to Plaintiff and argument about the significance of those facts." *See Schultz*, 2016 WL 8861701 at *1. On this record, the Court agrees with Defendant that Plaintiff has not established its expert's reliability.

**[42]** Nonetheless, the Court finds that exclusion is not appropriate at this juncture. As the court noted in *Houston*, Defendant's complaint that Gupta's report is too general to defend against likely would have been ameliorated by a deposition. Although the Rule 26(a)(2) disclosure alone does not provide adequate foundation for the admission of Gupta's testimony, additional information may reveal that his opinions and methodology are, indeed, reliable. *See Houston*, 2017 WL 11415011 at *3. As in *Houston*, the Court "is not in a position to make definite *Daubert* rulings" because "unanswered questions exist regarding the methodology and reliability of the experts' proffered testimony." *Id.* at *4. Facing a similar problem, the *Chaney* court, instead of excluding the expert testimony altogether, deferred ruling on the *Daubert* motion and permitted the proponent of the expert testimony to lay foundation at trial, at which time the other party could renew its objection if necessary. **\*1317** 2015 WL 12838839 at *4-5; *accord Nat'l Trust Ins. Co. v. Columbia Nat'l Ins. Co.*, 3:18-cv-1440-MMH-JBT, 2020 WL 4284813, *4-5 (M.D. Fla. July 10, 2020), *report and recommendation adopted by* 2020 WL 4428469 (July 31, 2020). The *Houston* court directed the proponent of the expert testimony to submit an affidavit describing: "(1) how their experience led to the conclusions they expect to offer at trial, (2) why that experience is a sufficient basis for their opinions, and (3) how they reliably applied that experience to the facts of the case." 2017 WL 11415011 at *4. This Court will do the same. Plaintiff is therefore directed to supplement its expert disclosure with an affidavit that answers these questions. Defendant will then be permitted to renew its *Daubert* motion, if appropriate. In the meantime, the Court will deny the instant motion without prejudice.

### IV. CONCLUSION

For the reasons described *supra*, both motions are due to be denied, without prejudice, with leave to renew should Plaintiff's supplemental disclosures fail to cure the described defects.

Accordingly, it is **ORDERED**:

1. Defendant Blue Banyan Solutions, Inc.'s Motion for Partial Summary Judgment (Doc. 39) is **DENIED** as to Sections 4 and 5. The Motion is **DENIED, without prejudice,** as to Sections 1, 2, and 3.

2. Defendant's Motion to Exclude Testimony of Plaintiff's Expert (Doc. 40) is **DENIED** to the extent that

Defendant challenges the relevance of Mr. Gupta's testimony or his qualifications. The Motion is **DENIED, without prejudice,** to the extent that Defendant challenges the reliability of his testimony.

3. Plaintiff is directed to file, within **FOURTEEN (14) DAYS** from the date of this Order, a supplemental affidavit from Mr. Gupta answering the following questions: (1) how his experience led to the conclusions he expects to offer at trial, (2) why that experience is a sufficient basis for his opinions, and (3) how he reliably applied that experience to the facts of the case.

   a. Should Defendant wish to renew its Motion to Exclude Gupta's Testimony, it shall do so within FOURTEEN (14) DAYS following receipt of Plaintiff's supplemental affidavit.

4. Plaintiff is further directed to, within **FOURTEEN (14) DAYS** of the date of this Order, amend its Rule 26(a) (1) disclosures to provide Defendant with a detailed computation of each claimed category of damages, and make available for inspection and copying the

documents or other evidentiary material on which each computation is based.

   a. Within FOURTEEN (14) DAYS from receipt of Plaintiff's amended disclosures, Defendant shall file a motion to reopen discovery to the extent directly necessitated by Plaintiff's amended disclosures; a renewed motion for partial summary judgment; or a joint notice of trial availability.

   b. Should Defendant move to reopen discovery, Defendant may also file a motion for fees and costs directly attributable to the amended disclosures within FOURTEEN (14) DAYS from the close of the reopened discovery.

**\*1318 DONE** and **ORDERED** in Tampa, Florida on March 23, 2023.

**All Citations**

663 F.Supp.3d 1294

---

## Footnotes

1   The Court has determined the facts, which are undisputed unless otherwise noted, based on the parties' submissions, including declarations and exhibits, as well as the parties' joint Stipulation of Agreed Material Facts (Doc. 60). For purposes of summary judgment, the Court considers the facts in the light most favorable to the non-moving party as required by Fed. R. Civ. P. 56.

2   The Court notes that neither party complied with the same Order's requirement to file a joint stipulation of agreed material facts on or before the date on which the memorandum in opposition to a motion for summary judgment is due. *See* Doc. 59. It also observes that the bare-bones Stipulation of Agreed Material Facts they filed in response to this Court's subsequent Order suggests there are very few facts that are *not* in dispute. *See* Doc. 60.

3   The relevant portion of Plaintiff's damages disclosures, contained in its responses to Defendant's first set of interrogatories, reads:

   Blue Banyan was well aware at the time of the contract that many of the contractual projects it undertook were critical and time was of the essence. The importance of the time was reiterated and Blue Banyan was pressed on their quoted timetables, which had been accepted by Go Mobile. Blue Banyan not only missed deadlines, but missed them by months. The urgency to complete these projects, and solve Blue Banyan problems and management issues was communicated to the highest levels of Blue Banyan multiple times. Despite these repeated requests, and multiple assurances from the highest levels of Blue Banyan, it failed to deliver.

The damages inflicted upon GMF because of these failures are set forth below:

Intercompany: ($240,000) ($10,000.00 per month for 24 months) Having to work around a broken system, including the extra time and risk along with the time spent having to create a duplicate accounting system in order to get reliable financials

Job Costing: ($70,000.00). Because of Blue Banyan's errors and mismanagement, GMF's job costing system did not function properly, resulting in overpayments in commissions.

Pay Now: ($84,000.00). This was never delivered, and never worked. This failure caused cash flow issues. GMF ended up having to have an employee dedicated to collections over the phone. Back Charge: ($36,000.00). This function did not work, and caused lost revenue.

Selection Sheets: ($200,000.00). GMF lost revenue because of this failure at $100,000 per month for two months. Project Mismanagement: ($10,140.00). GMF lost man hours due to Blue Banyan's poor quality control.

Doc. 39-3 at 2-3.

4   Defendant appears to have taken a similar approach regarding depositions. Defendant states in a footnote that Plaintiff refused to provide deposition dates for its witnesses or to agree to an extension of the discovery deadline, apparently preventing Defendant from conducting any depositions. Doc. 39 at 5 n.1 Yet Defendant did not file any motion to bring this issue to the Court's attention either.

5   Cases decided by the Fifth Circuit Court of Appeals before October 1, 1981, are binding precedent in the Eleventh Circuit today. *Bonner v. Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

6   This quotation appears in *Macken v. Martinez*, 214 Cal.App.2d 784, 29 Cal.Rptr. 867, 870 (1963).

7   Although Defendant critiques Gupta's lack of prior expert testimony, *see* Doc. 40 at 3, 5, and refers to an alleged failure to meet "all three elements" of *Daubert*, *id.* at 4, Defendant does not offer any argument regarding Gupta's qualifications. *See* Doc. 42 at 6 (characterizing this prong as undisputed).

8   The out-of-state cases on which Defendant relies are not to the contrary. Doc. 40 at 7. In *Horizontal Well Drillers v. Cent. Montana Res., LLC*, No. CIV-10-889-C, 2012 WL 12862819, *2-3 (W.D. Okla. Feb. 17, 2012)*, the court permitted some expert testimony about industry practices, but, as in *Bakersfield*, excluded other similar testimony because those opinions lacked foundation. In *Sample v. Kinser Ins. Agency, Inc.*, 700 N.E.2d 802, 804 (Ind. Ct. App. 1998)*, the Indiana Court of Appeals held that industry standards were not relevant in the face of an unambiguous contractual provision that conflicted with them. Neither case stands for a broad proposition that industry standards are irrelevant in a breach of contract case.

2012 WL 12896353

2012 WL 12896353
Only the Westlaw citation is currently available.
United States District Court, S.D. Florida.

Mary LEWIS, Plaintiff,

v.

CABANA COACHES, LLC, Defendant.

Case No. 12-20783-Civ-MOORE/TORRES
|
Signed 10/19/2012

**Attorneys and Law Firms**

G Ware Cornell, Jr., Elizabeth Goueti, Cornell & Associates, P.A., Weston, FL, Michael A. Cancelliere, Jr., Michael A. Rowe, Howard, Brenner & Naas, PC, Philadelphia, PA, for Plaintiff.

Alan Seth Feldman, Lydecker Diaz, Roland Manuel Potts, Hogan Lovells US LLP, Miami, FL, for Defendant.

## ORDER GRANTING IN PART DEFENDANT'S MOTION TO COMPEL DISCOVERY

EDWIN G. TORRES, United States Magistrate Judge

**\*1** This matter is before the Court on Defendant's Motion to Compel Better Answers to Interrogatories and Requests for Production [D.E. 42]. The Court has reviewed the motion, response, and reply, and the record in the case, and GRANTS in part and DENIES in part Plaintiff's motion as follows.

1. This matter arises from a Complaint alleging negligence against Defendant for injuries that Plaintiff allegedly suffered while trying to disembark from a bus operated by Defendant. Plaintiff claims that the driver was negligent by not helping her off the bus and "misaligning" the bus by leaving too large a gap between the last step of the bus and the curb. To support diversity jurisdiction, the complaint alleges that the damages exceed $150,000. [D.E. 1 at 1].

2. Defendant served fairly standard interrogatories and requests for production in a case like this, which in part seek information and documents that are required to be disclosed under Rule 26(a), such as the calculation of Plaintiff's damages and the identification of documents that Plaintiff will rely upon to prove her claims.

3. Plaintiff, however, summarily objected to a wide variety of these requests, arguing in large part that discovery was "ongoing" and that it was too premature for Plaintiff to respond. Plaintiff also included boilerplate objections to "vague" requests like "Any and all documents to be used to prove the Defendant failed to have its bus under proper and adequate control at the time of the Incident." Plaintiff explained that such requests were improper as they "call[ ] for subjectively determinable universes of documents and require[ ] the Plaintiff to employ the contents of her mind to choose what documents might be responsive to this request." [D.E. 42 at 8].

4. Plaintiff forgets, however, that the well-recognized practice of "discovery" in federal court indeed requires a party to disclose and produce those documents that the party intends to utilize at trial *even if* she has to use her mind. "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession. The deposition-discovery procedure simply advances the stage at which the disclosure can be compelled from the time of trial to the period preceding it, thus reducing the possibility of surprise." *Mazur v. Lampert,* 04-61159 CIV, 2007 WL 917271, at *3 (S.D. Fla. Mar. 25, 2007) (quoting *Hickman v. Taylor,* 329 U.S. 495, 507 (1947) and holding that generic disclosure of witnesses and facts known to party that were intended to be used at trial were discoverable); *see also* Adv. Comte. Notes, 2000 Amends., Rule 26(a)(1) ("A party is no longer obligated to disclose witnesses or documents, whether favorable or unfavorable, that it does not intend to use.... Because the disclosure obligation is limited to material that the party may use, it is no longer tied to particularized allegations in the pleadings.").

**\*2** 5. Consequently, there was nothing improper in these production requests. Indeed, they were properly phrased to limit the production to only those documents that Plaintiff intended to use at trial, as opposed to the broader and more problematic request that seeks "all documents that refer or relate in any way, shape or form, to...." Plaintiff's blanket objections to these requests are thus quite improper and are overruled.

6. The Court recognizes that Plaintiff, in her response, claims that notwithstanding these objections all responsive documents have now been produced. If that is the case that would moot the issue. But to make sure the record is clear and

Case 1:24-cv-22523-KMM Document 60-4 Entered on FLSD Docket 07/09/2025 Page 26 of 30

Lewis v. Cabana Coaches, LLC, Not Reported in Fed. Supp. (2012)

2012 WL 12896353

Plaintiff is formally bound to the veracity of her discovery responses at a later date, the Court will grant the motion as to these requests to require Plaintiff to formally represent that all responsive documents to each and every one of these production requests have been searched for and produced in their entirety.

7. With respect to the interrogatories at issue in the pending motion, the Court will also Grant the motion in part as to those interrogatories that simply restated what Plaintiff was obligated to disclose under Rule 26(a). Pursuant to that Rule, a defendant is entitled to a "computation of each category of damages claimed by the disclosing party...." Fed. R. Civ. P. 26(a)(1)(A)(iii). " 'By its very terms Rule 26(a) requires more than providing—without an explanation—undifferentiated financial statements; it requires a computation,' supported by documents." *Shock v. Aerospace Integration Corp.,* No. 3:08cv304/RV/EMT, 2009 WL 595923, at *4 (N.D. Fla. Mar. 6, 2009) (quoting *Design Strategy, Inc. v. Davis,* 469 F.3d 284, 295 (2d Cir. 2006)). Plaintiff may not shift to Defendant the burden of attempting to determine the amount of Plaintiff's alleged damages. Rather, Plaintiff must compute in dollars how much she claims for each category of damages.

8. As to computation for non-economic damages, courts are divided as to whether calculations are required under Rule 26. Read literally, the Rule requires a computation of all damages, including both economic and non-economic damages. Thus, some courts have required the plaintiff to disclose an amount for categories of damages such as pain and suffering. For instance, in *Lucas v. Transamerica Life Insurance Co.,* No. 5:10-CV-76-KKC, 2011 WL 5148883, at *1 (E.D. Ky. Oct. 21, 2011), the court held that "Rule 26(a) (1)(A)(iii) is unambiguous—it applies to *each* category of damages claimed; it is not limited to economic damages." *Id.* In that case, the plaintiff was required to identify "an amount —either a specific sum or a range—to be sought as to each non-economic category." *Id.*

9. Also, in *Dixon v. Bankhead,* No. 4:00CV344-WS, 2000 WL 33175440, at *1 (N.D. Fla. Dec. 20, 2000), the court required the plaintiff to provide a computation for non-economic damages. In that case, the court explained, "[i]f Plaintiff is to be permitted to testify to his intangible emotional harm, as he should be, he surely can place a dollar value on that from his own perspective. He is in a better position to do this than the jury." *Id.*

10. Various other courts, however, have held that calculations are not required where the plaintiff does not intend to ask the jury for a specific dollar amount. *See Merrill v. Waffle House, Inc.,* 227 F.R.D. 467, 470 (N.D. Tex. 2005) (holding that a computation is not required for non-economic damages where the plaintiff does not intend to seek a specific dollar amount from the jury); *Gray v. Florida Dept. of Juvenile Justice,* No. 3:06-cv-990-J020MCR, 2007 WL 295514, at *2 (M.D. Fla. Jan. 30, 2007) ("Plaintiff is not required to provide Defendant with a calculation of her suggested compensatory damages for emotional distress pursuant to Rule 26(a)(1)(c). This conclusion, however, mandates that in the event this case proceeds to trial, Plaintiff may not suggest to the jury a suggested amount of compensatory damages for her emotional distress."); *Sandoval v. American Building Maintenance Industries, Inc.,* 267 F.R.D. 257, 282 (D. Minn. 2007) ("To the extent that plaintiffs do not intend to suggest a specific amount to the jury for emotional distress damages, this Court will not require them to disclose a computation of these damages ... If plaintiffs do not provide this information ... they will not be allowed to suggest a specific amount to the jury for emotional distress damages.").

**\*3** 11. We agree with the courts' analyses in *Gray* and *Sandoval.* To the extent that Plaintiff does not intend to ask the jury for a specific dollar amount or a range for non-economic damages, Plaintiff is not required to provide a computation for non-economic damages under Rule 26(a)(1) (A)(iii) nor required to provide that calculation in response to these interrogatories. However, this ruling is premised on Plaintiff's stipulation to leave the non-economic damages determination to the jury in toto. Therefore, if Plaintiff decides not to disclose a computation for non-economic damages during discovery, then Plaintiff shall be precluded from suggesting *any* amount of non-economic damages to the jury at any point or manner during the trial. If Plaintiff in hindsight intends otherwise, then Plaintiff is obligated to disclose that calculation in discovery. But as to economic damages, Plaintiff is required to fully disclose all computations requested in these interrogatories. She cannot simply categorize the type of damage, as she did in her initial responses.

12. Accordingly, the motion to compel better answers to Interrogatory Request Nos. 12 (e), 13 (f), 14 (b), 14 (g), 15 (b), and 16 (c) is GRANTED subject to the conditions of this Order.

Lewis v. Cabana Coaches, LLC, Not Reported in Fed. Supp. (2012)

2012 WL 12896353

13. Similarly, a more complete response to Interrogatory Request No. 21 is also compelled because that interrogatory is only seeking information that Plaintiff was obligated to disclose under Rule 26(a) (requiring disclosure of names and addresses of persons with discoverable information "along with the subjects of that information—that the disclosing party may use to support its claims or defenses, ...."). The interrogatory response disclosed names and addresses of persons with knowledge but did not describe the nature of such knowledge. Defendant correctly argues that the missing information is responsive and necessary for a proper and complete response. The motion is also Granted as to this Request.

14. The other responses to Interrogatory Requests challenged in the motion are adequate and will not be compelled herein, leaving Defendant the opportunity to develop them further in Plaintiff's deposition. The Motion is thus Denied as to the remaining interrogatories.

15. Because the discovery at issue in this Order, to the extent it has been compelled, should have been provided long ago, and the discovery cutoff period is now imminent, as relief under Rule 37(a) Defendant shall have leave to conduct any follow-up discovery of any kind with respect to these matters through December 5, 2012. The Court has recently Denied any broad extension of the pretrial or trial deadlines. Thus, only Defendant shall have leave to conduct follow-up discovery as a remedy for Plaintiff's clear violations of the discovery rules in the responses at issue. As a result of this remedial step, no monetary sanction shall be entered.

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendant's Motion to Compel is **GRANTED** in part **DENIED** in part. Plaintiff shall serve within seven (7) days amended production and interrogatory responses as required herein together with any responsive documents not previously produced. Defendant may conduct follow-up discovery on such information, if necessary, through December 5, 2012. It is further Ordered that all requests for monetary sanctions in the motion will be Denied without prejudice subject to anticipated compliance with this Order.

**DONE AND ORDERED** in Chambers, at Miami, Florida, this 19th day of October, 2012.

**All Citations**

Not Reported in Fed. Supp., 2012 WL 12896353

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 2334703
Only the Westlaw citation is currently available.
United States District Court,
S.D. Florida.

Niurka DE VARONA, Plaintiff,
v.
DISCOUNT AUTO PARTS, LLC, a foreign
Limited Liability Company, d/b/a Advance Auto
Parts and John Grant, an individual, Defendants.

No. 12–20714–Civ.
|
June 19, 2012.

**Attorneys and Law Firms**

Judd Gordon Rosen, Glen Z. Goldberg, Goldberg & Rosen PA, Miami, FL, for Plaintiff.

Michele Aimee Vargas, Emmet Jay Schwartzman, Carlton Fields, Miami, FL, for Defendant.

*ORDER GRANTING IN PART DEFENDANT'S MOTION TO COMPEL DISCOVERY*

EDWIN G. TORRES, United States Magistrate Judge.

**\*1** This matter is before the Court on Defendant's Motion to Compel Compliance with Fed.R.Civ.P. 26 Initial Disclosure Damage Computations, and request for sanctions pursuant to Fed.R.Civ.P. 37. [D.E. 8]. This motion is referred to the undersigned Magistrate Judge. [D.E. 10]. The Court has reviewed the motion, response, and reply, and the record in the case, and GRANTS in part and DENIES in part Plaintiff's motion as follows.

1. This matter was initiated when Plaintiff filed a Complaint alleging negligence against Defendant for injuries that she allegedly suffered from a slip-and-fall on Defendant's commercial premises. Defendant has filed the pending motion seeking to compel Plaintiff to provide damage calculations as required by Fed.R.Civ.P. 26(a)(1)(A)(iii) [1]. According to the motion, Plaintiff served initial disclosures on Defendant on April 27, 2012, wherein she failed to list the computation for each category of damages that she claims. After Defendant filed the motion, Plaintiff served its Amended Disclosures, which included some itemized costs for several of the damage

categories, but failed to provide the total amount of damages requested for each category. Further, Plaintiff refused to include a specific dollar valuation for her noneconomic damages.

2. Plaintiff argues that her Amended Disclosures are sufficient to the extent they provide a "thorough computation of her economic damages." Furthermore, Plaintiff contends that she has no obligation to provide a computation of non-economic damages because she "does not presently intend to suggest a specific dollar valuation of her non-economic damages to the jury." [D.E. 15].

3. Defendant argues that the Amended Disclosures do not satisfy Rule 26 requirements because Plaintiff failed to provide a specific amount for each category of damages that she claims. Also, Defendant contends that Plaintiff is required to provide an early computation of the non-economic damages in its initial disclosures. Finally, Defendant asserts that sanctions must be imposed. [D.E. 17].

4. Pursuant to Rule 26, a defendant is entitled to a "computation of each category of damages claimed by the disclosing party...." Fed.R.Civ.P. 26(a)(1)(A)(iii). We agree with Defendant that " '[b]y its very terms Rule 26(a) requires more than providing-without an explanation-undifferentiated financial statements; it requires a computation," supported by documents." *Shock v. Aerospace Integration Corp.,* No. 3:08cv304/RV/EMT, 2009 WL 595923, at \* 4 (N.D.Fla. Mar.6, 2009) (quoting *Design Strategy, Inc. v. Davis,* 469 F.3d 284, 295 (2d Cir.2006)). Plaintiff may not shift to Defendant the burden of attempting to determine the amount of Plaintiff's alleged damages. Rather, Plaintiff must compute in dollars how much she claims for each category of damages.

5. As to computation for non-economic damages, courts are divided as to whether calculations are required under Rule 26. Read literally, the Rule requires a computation of all damages, including both economic and non-economic damages. Thus, some courts have required the plaintiff to disclose an amount for categories of damages such as pain and suffering. For instance, in *Lucas v. Transamerica Life Insurance Co.,* No. 5:10–CV–76–KKC, 2011 WL 5148883, at \*1 (E.D.Ky. Oct.21, 2011), the court held that "Rule 26(a)(1)(A)(iii) is unambiguous—it applies to *each* category of damages claimed; it is not limited to economic damages." *Id.* In that case, the plaintiff was required to identify "an amount—either a specific sum or a range-to be sought as to each non-economic category." *Id.*

De Varona v. Discount Auto Parts, LLC, Not Reported in F.Supp.2d (2012)

2012 WL 2334703

**\*2**  6. Also, in *Dixon v. Bankhead,* No. 4:00CV344–WS, 2000 WL 33175440, at \* 1 (N.D.Fla. Dec.20, 2000), the court required the plaintiff to provide a computation for non-economic damages. In that case, the court explained, "[i]f Plaintiff is to be permitted to testify to his intangible emotional harm, as he should be, he surely can place a dollar value on that from his own perspective. He is in a better position to do this than the jury." *Id.*

7. Various other courts, however, have held that calculations are not required where the plaintiff does not intend to ask the jury for a specific dollar amount. *See Merrill v. Waffle House, Inc.,* 227 F.R.D. 467, 470 (N.D.Tex.2005) (holding that a computation is not required for non-economic damages where the plaintiff does not intend to seek a specific dollar amount from the jury); *Gray v. Florida Dept. of Juvenile Justice,* No. 3:06–cv–990–J020MCR, 2007 WL 295514, at \*2 (M.D.Fla. Jan.30, 2007) ("Plaintiff is not required to provide Defendant with a calculation of her suggested compensatory damages for emotional distress pursuant to Rule 26(a) (1)(c). This conclusion, however, mandates that in the event this case proceeds to trial, Plaintiff may not suggest to the jury a suggested amount of compensatory damages for her emotional distress."); *Sandoval v. American Building Maintenance Industries, Inc.,* 267 F.R.D. 257, 282 (D.Minn.2007) ("To the extent that plaintiffs do not intend to suggest a specific amount to the jury for emotional distress damages, this Court will not require them to disclose a computation of these damages ... If plaintiffs do not provide this information ... they will not be allowed to suggest a specific amount to the jury for emotional distress damages .")

8. This Court agrees with the courts' analyses in *Gray* and *Sandoval.* To the extent that Plaintiff does not intend to ask the jury for a specific dollar amount, or a range for non-economic damages, Plaintiff is not required to provide a computation for non-economic damages under Rule 26(a)(1) (A)(iii). However, this ruling is based on Plaintiff's stipulation to leave the non-economic damages determination to the jury in toto. Therefore, if Plaintiff decides not to disclose a computation for non-economic damages at the initial disclosure phase, then Plaintiff is precluded from suggesting any amount of non-economic damages to the jury at any point or manner during the trial [2].

9. As a remedy for the Plaintiff's violations of the discovery rules, the Court will grant this motion in part. No sanctions shall be entered at this time in the belief that Plaintiff shall comply with this Order and mitigate any prejudice already suffered due to the violations of the Court's Rules. If Plaintiff complies with this Order and provides a computation for each category of economic damages, then no sanctions shall be necessary.

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendant's Motion to Compel is **GRANTED** in part. Plaintiff shall serve within ten (10) days computations for each category of damages claimed in compliance with Rule 26(a)(1)(A)(iii).

**\*3**  It is further Ordered that all requests for monetary sanctions in the motion will be Denied without prejudice subject to anticipated compliance with this Order.

**DONE AND ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 2334703

---

## Footnotes

1    Defendant cites to Fed. R. Civ. P 26(a)(1)(C) for the requirement that Plaintiff provide a computation for each category of damages claimed. However, Rule 26 was redrafted in 2007. Now, the correct section that requires this initial disclosure is Rule 26(a)(1)(A)(iii).

2    Plaintiff may wish to rethink its position on this point. Plaintiff may amend its disclosure to include a computation for non-economic damages at this stage, and leave open the ability to request a specific amount from the jury within the range disclosed. As it stands now, Plaintiff would tie her own hands at the discovery phase of the case.

**De Varona v. Discount Auto Parts, LLC, Not Reported in F.Supp.2d (2012)**

2012 WL 2334703

---

**End of Document**                                          © 2025 Thomson Reuters. No claim to original U.S. Government Works.

---